# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60697

United States Court of Appeals
Fifth Circuit

**FILED**
March 26, 2019

Lyle W. Cayce
Clerk

SHEANETER J. BOGAN.,

      Plaintiff - Appellant

v.

MTD CONSUMER GROUP, INCORPORATED,

      Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Sheaneter Bogan filed suit alleging that she was fired because of her race and sex. A jury found in her favor but awarded her just $1. The district court then denied Bogan both reinstatement and front pay, leaving her with no remedy. We review the district court's decision not to award prospective relief. Because two of the reasons the district court relied on in denying reinstatement do not support that result, we remand for reconsideration.

## I.

### A.

Bogan worked at MTD Consumer Group, a manufacturer of outdoor power equipment, for about 20 years. She started with the company in

unskilled positions, but while working took full-time classes at a community college so she could obtain a skilled position. After she completed that coursework, MTD eventually promoted Bogan to be a machinist in the Tool and Die department. She remained in that job for about two years until her termination in April 2013.

While pursuing the Tool and Die position, Bogan also began going to school for a degree in social work. Her supervisors initially accommodated her class schedule with flexible work hours. But in fall 2012, human resources notified Bogan that, based on company policy only allowing flexible hours for work-related schooling, she had to work a normal shift.

Despite this decision, Bogan still worked some irregular hours. So Bogan's supervisors reminded her that she had to work the regular 5:00 a.m. to 3:30 p.m shift and could not attend classes during work hours. But on occasion Bogan would squeeze class time into her lunch break. When a supervisor learned about this, he suspended Bogan. MTD then terminated her, ostensibly because she came back from lunch late. Bogan unsuccessfully appealed her termination to an employee review board.

B.

After receiving a right-to-sue letter from the EEOC, Bogan filed this suit alleging race and sex discrimination. MTD sought summary judgment. The district court denied that motion, concluding that the evidence could support a finding that MTD's reason for the termination was pretextual. For example, other employees "routinely" took lunch breaks that lasted longer than thirty minutes, but Bogan was the only one punished for doing so. The court also pointed to doubts about the accuracy of information in Bogan's personnel file.

A four-day trial followed that resulted in the jury finding that MTD "discriminated against [Bogan] on the basis of her race and/or gender." The

17-60697

jury awarded her $1, perhaps because of a jury instruction on the consequences of a failure to mitigate, an argument that MTD pushed.

Bogan then asked the court for reinstatement or front pay. The district court held a hearing after which it denied both requests. It cited four factors that it believed counseled against reinstatement and refused to order that remedy. For front pay, the court held that MTD established that Bogan did not mitigate her damages.

## II.

Reinstatement and front pay are equitable remedies. The ultimate exercise of a court's equitable power is reviewed for abuse of discretion. *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990). An error of law or application of an incorrect legal standard rises to that level. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). But the factual findings that underlie the decision to grant or deny relief are reviewed only for clear error. *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1138 (5th Cir. 1988).

## A.

That deferential standard for review of factual determinations disposes of Bogan's appeal of the front pay ruling. Bogan argues she did make reasonable efforts to obtain work and tried to keep up with her training. She makes some good points, but there was also evidence to support the district court's contrary conclusions. We thus see no clear error in the court's finding that Bogan did not use reasonable diligence to obtain "substantially equivalent employment." *Id.*

## B.

That leaves her challenge to the ruling on reinstatement. Reinstatement is the preferred equitable remedy under Title VII. *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1989). Reinstatement more tightly fits the termination injury. It does not require answering the front pay

3

question of "whether and for how long a plaintiff will work in the future," for which a bad guess means either that plaintiff is "left without a remedy" or "end[s] up with a windfall." *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1423 (4th Cir. 1991); *see also Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991) (noting that front pay is "necessarily speculative in nature" and requires the court to engage in "intelligent guesswork"). And reinstatement restores not just the financial benefits of a job but also the "psychological benefits" of work. *Allen v. Autauga Cty. Bd. of Educ.*, 685 F.2d 1302, 1306 (11th Cir. 1982). Ergo, reinstatement is most consistent with Title VII's "'make-whole' philosophy." *Hansard*, 865 F.2d at 1469.

This case presents an unusual situation in which no prospective (or meaningful retrospective) relief was awarded after a finding of discrimination. Our caselaw contemplates that one form of prospective relief will ordinarily be appropriate when it is requested. We have often said that the trial court's remedial discretion in this area involves the "*selection between* reinstatement and front pay." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 180 (5th Cir. 1992) (emphasis added); *see also Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (quoting *Brunnemann*); *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88 (5th Cir. 1995) (same). The typical "either/or" nature of this remedial choice is also seen in our statement that "if reinstatement is not feasible, front pay is the appropriate award." *Weaver*, 66 F.3d at 88; *Brunnemann*, 975 F.2d at 180 ("Generally, if reinstatement is not feasible, front pay will be awarded."); *see also Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir. 1991) ("[P]revailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay."). In discussing another federal employment statute (the retaliation provision of the Fair Labor Standards Act), Judge Wisdom went so far as to say that "it is impossible for us to imagine

cases when a denial of both reinstatement and reimbursement would be justified."[1] *Goldberg v. Bama Mfg. Corp.*, 302 F.2d 152, 156 (5th Cir. 1962).

Yet given the equitable nature of these remedies and the limits of our imagining the full variety of situations that arise in the workplace, there may be outlier situations in which no prospective relief is appropriate for a victim of discrimination. Indeed, although the parties could point to no case from our court in which a plaintiff sought either form of prospective relief but received neither,[2] we found one such case involving an award of punitive damages that the district court concluded was enough to make the victim whole. *Hadley v. VAM P T S*, 44 F.3d 372, 376 (5th Cir. 1995). The Supreme Court has also identified one scenario: when after termination the employer obtains evidence of serious employee misconduct. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361–62 (1995).[3] But our consistent signaling is that the usual case involves a district court's choosing which of the two options better serves

---

[1] When Judge Wisdom made that observation, the FLSA did not allow damages for retaliation. 29 U.S.C. § 216(b); Pub. L. 95-151 (1977) (adding provision that allows for both legal and equitable remedies). It now does, as does Title VII since the Civil Rights Act of 1991. 42 U.S.C. § 1981a(a)(1); Pub. L. No. 102-166 (1991). Yet most of the cases cited above discussing equitable Title VII remedies arose after the 1991 amendments allowed damages.

[2] MTD cited two examples at oral argument, *Giles v. Gen. Elec. Co.*, 245 F.3d 474 (5th Cir. 2001) and *Hansard*, 865 F.2d 1461. In *Giles*, the plaintiff was denied back pay, but received front pay. We indicated that it may have been appropriate to deny front pay, but it was not an abuse of discretion to allow it. 245 F.3d at 489. In *Hansard*, we reduced a plaintiff's back pay for failure to mitigate and remanded the issue of front pay to the district court to consider mitigation. 865 F.2d at 1468. Neither of these cases foreclose the possibility that a plaintiff may be denied a prospective remedy. But neither considered or affirmed a judgment in which a plaintiff was denied any prospective remedy.

[3] There are also examples from other circuits. The Eighth Circuit held that evidence of post-termination misconduct (as opposed to *McKennon*'s after-acquired evidence of pre-termination misconduct) that would render the plaintiff ineligible for reinstatement may also justify denying both equitable remedies. *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004). The Seventh Circuit upheld denial of both reinstatement and front pay when the jury found the plaintiff's earning capacity was not harmed as he had changed careers and started receiving a higher salary. Although he later alleged he had trouble holding that job, the court said his employer was not required to "insure his future employment success." *McKnight v. Gen. Motors Corp.*, 973 F.2d 1366, 1372 (7th Cir. 1992).

the "purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975); *Brunnemann*, 975 F.2d at 180.

Before we can assess whether the district court abused its discretion in not reinstating Bogan, we review each factor it cited in support of that ruling. The first two are ones that do counsel against reinstatement. Because Bogan's position no longer "exists as it did during her employment," the district court properly considered that reinstatement would require training on new machines and that the company did not have a present opening in the Tool and Die department. *See Palasota*, 499 F.3d at 489. It was also permissible for the court to rely on its finding that Bogan had intended to change careers to social work. *Id.*

The third reason the district court cited is MTD's argument that it "would have terminated Plaintiff in the absence of any purported discrimination" because of "her inability to follow the rules and her attitude." *See* 42 U.S.C. § 2000e-5(g)(2)(B). Yet the district court did not find that MTD proved this statutory defense, it only noted it as MTD's position. More fundamentally, the district court could not find in favor of MTD on this issue because the jury had rejected it. It was instructed that "[i]f you find by a preponderance of the evidence that MTD Consumer Group Inc has proved it would have terminated Ms. Bogan's employment even if it had not considered her race and/or gender, you must find for the Defendant, MTD Consumer Group Inc, and go no further in your deliberations." *See also* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil Cases) 11.13 (2014); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 253 (1989). The jury thus must have rejected this defense in finding that MTD was liable for discrimination. It would be improper for the court to override the jury's factfinding on this question when deciding equitable relief. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d

955, 965 (10th Cir. 2002) ("[W]hen legal and equitable issues to be decided in the same case depend on common determinations of fact . . . the court in resolving the equitable issues is then bound by the jury's findings on them."); *In re Lewis*, 845 F.2d 624, 630 (6th Cir. 1988) ("In the context of employment discrimination cases, it is well-settled that a jury's findings of discrimination are binding on a court considering reinstatement."); *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 355 (7th Cir. 1987) ("[I]n deciding whether to grant equitable relief under Title VII, the district court [is] prohibited from reconsidering any issues necessarily and actually decided by the jury."); *Lindsey v. Am. Cast Iron Pipe Co.*, 810 F.2d 1094, 1097–98 (11th Cir. 1987) (holding that a district court's rejection of liquidated damages in an age discrimination case was improper because it relied on factual findings "that conflicted with the jury's findings"); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982) (stating that the district court "cannot base its decision on its own factual findings that conflict with those expressly made by the jury"). Allowing MTD to relitigate the verdict during the remedial phase was error.

The final reason the district court cited in denying reinstatement—"discord between the parties"—is also problematic because of the apparent source of that acrimony. For understandable reasons, hostility between the parties that is likely to disrupt the workplace if the employee returns can be a reason for denying reinstatement. *See, e.g.*, *Deloach*, 897 F.2d at 822. Such acrimony is often cited by courts that award front pay rather than requiring the plaintiff to return to a discriminatory employer. *Id.* (addressing employer's appeal of front pay award in which it argued that reinstatement was preferable even though the district court had found there was too much discord between the parties for that remedy); *see also Walther v. Lone Star Gas Co.*, 952 F.2d

119, 127 (5th Cir. 1992) (addressing employer's argument that reinstatement should have been imposed rather than front pay award).

What makes this a challenging area is that the post-lawsuit context in which this question arises usually sees some friction between the parties. Antagonism is a natural by-product of lawsuits, often even more so for ones alleging discrimination. If the hostility common to litigation were sufficient for "denial of reinstatement, reinstatement would cease to be a remedy except in cases where the defendant felt like reinstating the plaintiff." *EEOC v. Century Broad. Corp.*, 957 F.2d 1446, 1462 (7th Cir. 1992); *see also Weaver v. Amoco Prod. Co.*, 95 F.3d 52, 1996 WL 459345 at *2 (5th Cir. 1996) (unpublished) (noting that the hostility must "exceed the animosity level that commonly arises between opposing parties throughout the litigation process"). And for reasons we have just explained, the finding of discord cannot rely on reasons rejected by the jury, such as hostility stemming from the employee's alleged misconduct that the jury found to be pretextual. *Cf. Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995) (recognizing that finding of discord could not be based "upon reasons rejected by the jury," though concluding that is not what the district court's ruling relied on). So more than the friction that typically results from litigation or the employee's termination is required for the discord to be a reason not to order reinstatement.

The acrimony must rise to the level at which the parties' relationship is "irreparably damaged." *Walther*, 952 F.2d at 127; *see also Allen*, 685 F.2d at 1306 ("Unless we are willing to withhold full relief from all or most successful plaintiffs in discharge cases, and we are not, we cannot allow actual or expected ill-feeling alone to justify nonreinstatement."). That "lingering hostility" existed when a plaintiff had alleged that his employer "attempted to black-ball him in the industry" and the employer alleged the plaintiff filed falsified

expense reports, something that it did not allege was a justification for the plaintiff's actual termination but could have been. *Palasota*, 499 F.3d at 490.[4]

The district court did not find that the relationship between Bogan and MTD rose to the level at which it was irreparably damaged and exceeded the antagonism that normally results from trials. *Walther*, 952 F.2d at 127 (stating that a court should cite "specific instances of discord" for the acrimony to justify denying reinstatement). It did describe MTD's hostility towards Bogan as "palpable," but the only example cited was the remedial-phase testimony of the human resources manager when he "discussed the human resources issues he would face if the employee review process were to be negated by reinstating Plaintiff." It is not clear that this problem is one of hostility rather than inconvenience. And the concern that a court order of reinstatement would be inconsistent with, and thus undermine, the employer's own dispute resolution procedures that resulted in termination would seemingly always exist. More than that common situation is needed to find that the relationship between the parties is so broken that it has reached the point of no return. *Id.* Finally, it is the jury's finding of discrimination that contradicted the employee review process, so allowing that disagreement to defeat reinstatement runs the risk we have already discussed of not honoring the jury's verdict. Without evidence that the relationship between Bogan and MTD exceeded that which normally accompanies trials, this factor does not militate against the preferred remedy of reinstatement.

---

[4] Examples from other circuits highlight how severe the hostility usually is when courts use it to deny reinstatement. *See Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 562 (4th Cir. 2018) (denying reinstatement when the plaintiff made social media posts following his termination calling the city for which he worked a "crooked [expletive] hole of a town" and questioning the judgement of law enforcement decisions); *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 892 (8th Cir. 2000) (finding sufficient acrimony to preclude reinstatement in a False Claims Act case when there was evidence of attempts by the plaintiff's coworkers to "intimidate and harass" her after she filed her suit).

17-60697

Because the district court should not have considered two of the four factors it relied on in denying reinstatement, we cannot review its conclusion that Bogan's reinstatement would not further the remedial goals of Title VII. The remedial discretion is vested in the district court, and we do not know how it would exercise that authority with two fewer factors on the "no reinstatement" side of the scale. We thus remand for further proceedings without suggesting how the district court should exercise its discretion based on the two factors that remain or other permissible considerations that the district court may find relevant.

*** 

AFFIRMED in part, VACATED and REMANDED in part.