Argued and submitted September 19, 2019, decision of Court of Appeals and judgment of trial court affirmed August 28, 2020

Gene SUMMERFIELD,
*Petitioner on Review,*

*v.*

OREGON LIQUOR CONTROL COMMISSION,
*Respondent on Review.*

(CC CV12100185) (CA A157108) (SC S066377)

472 P3d 231

Plaintiff filed a complaint alleging, among other things, that defendant, his former employer, violated statutes that (1) required defendant to reemploy him after a work injury, ORS 659A.046, (2) prohibited defendant from retaliating against him for opposing or reporting racial discrimination or harassment, ORS 659A.030(1)(f), and (3) prohibited defendant from retaliating against him for "whistleblowing," that is, making a good faith report of what he believed was a violation of law, ORS 659A.199. The trial court granted defendant's motion for a directed verdict on plaintiff's reemployment claim, declined to read an instruction defining "adverse employment action" in connection with plaintiff's retaliation claim, and declined to award him equitable relief on his whistleblowing claim. The Court of Appeals affirmed. *Held*: (1) The trial court did not err in granting defendant a directed verdict on plaintiff's reemployment claim because a plaintiff claiming a violation of ORS 659A.046 must prove that there was an available and suitable position in which the plaintiff could have been reemployed and, in this case, plaintiff conceded that he had failed to do so; (2) the trial court erred in failing to give plaintiff's requested jury instruction defining "adverse employment action" for purposes of a retaliation claim under ORS 659A.030 (1)(f) but the error was harmless; and (3) the trial court did not err in declining to award plaintiff equitable relief under the circumstances.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

On review from the Court of Appeals.*

Michael E. Rose, Portland, argued the cause and filed the briefs for petitioner on review.

Colm Moore, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* Appeal from Clackamas County Circuit Court, Katherine Weber, Judge. 294 Or App 415, 431 P3d 424 (2018).

Caitlin Mitchell, Johnson Johnson Lucas & Middleton PC, Eugene, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Kistler, Senior Judge, Justice pro tempore.**

DUNCAN, J.

The decision of the Court of Appeals and the judgment of the trial court are affirmed.

_____
** Garrett, J., did not participate in the consideration or decision of this case.

**DUNCAN, J.**

Plaintiff brought this civil action against defendant, his former employer, raising multiple claims of unlawful employment actions. A jury rejected all but one of plaintiff's claims. On the single claim on which the jury found for plaintiff, it did not award him any damages. Consequently, the trial court entered a judgment in defendant's favor. Plaintiff appealed, and the Court of Appeals affirmed. *Summerfield v. OLCC*, 294 Or App 415, 431 P3d 424 (2018). For the reasons explained below, we also affirm.

## I.   PROCEDURAL AND HISTORICAL FACTS

We begin with an overview of the procedural and historical facts. Additional facts that are relevant to the issues on review are set out in the discussion section below, where we address each of the issues separately.

Plaintiff, Gene Summerfield, worked for defendant, Oregon Liquor Control Commission (OLCC), in its warehouse. In his complaint in this civil action, plaintiff alleged that he and other African-Americans had been subjected to racial discrimination and racial harassment at the warehouse. Plaintiff also alleged that he had repeatedly told defendant about the discrimination and harassment, but defendant had failed to take effective corrective action. Instead, according to plaintiff, defendant had passed him over for promotions and had promoted persons who had discriminated against him. Plaintiff further alleged that, after he filed a racial discrimination complaint against defendant with the Bureau of Labor and Industries (BOLI), he found a noose in his work area. Plaintiff reported the noose and left work. He filed a workers' compensation claim for acute stress, and the claim was accepted. Plaintiff received medical treatment for his acute stress, and his medical provider eventually released him to return to work at a site other than the OLCC warehouse. Plaintiff requested reemployment, but—according to plaintiff's complaint in this action—defendant failed to reemploy him in an available and suitable position; instead, defendant initiated an investigation into allegations that plaintiff had engaged in workplace misconduct four years earlier. After the investigation, which plaintiff alleged was

biased against him and incomplete, defendant terminated plaintiff's employment.

Based on those allegations, plaintiff made several claims for relief, four of which are relevant on review. Those four claims were brought pursuant to ORS 659A.885(1), which provides that "[a]ny person claiming to be aggrieved" by certain unlawful employment practices "may file a civil action in circuit court." ORS 659A.885(1) further provides that, "[i]n any action under this subsection, the court may order injunctive relief or any other equitable relief that may be appropriate, including but not limited to reinstatement or the hiring of employees with or without back pay."

Plaintiff's first claim, an employment discrimination claim, alleged that defendant "discriminated against Plaintiff in the terms and conditions of his employment, which constitutes racial discrimination" and "created a hostile work environment." Plaintiff's second claim, which he entitled "retaliation," alleged that defendant "discriminated against Plaintiff for opposing unlawful employment practices." His third claim, which he entitled "whistleblowing," alleged that defendant "discriminated and retaliated against Plaintiff in the terms and conditions of his employment due to his complaints of racial harassment, discrimination, and retaliation." A fourth claim, which he entitled "failure to reemploy," alleged that defendant "failed to reemploy Plaintiff in an available and suitable position after his repeated requests."[1]

Plaintiff alleged that, as a consequence of defendant's conduct, he "suffered lost wages" and "emotional distress and upset" and related harms. He sought economic damages, noneconomic damages, reinstatement, and injunctive relief, as well as "any and all other relief as [the trial court] may deem proper."

The case proceeded to a jury trial, during which the parties presented competing versions of events, which they previewed in their opening statements. In his opening

---

[1] Plaintiff also brought a claim for "race discrimination," alleging a violation of 42 USC section 1981, and a claim for "race intimidation," alleging a violation of ORS 30.198. The trial court granted defendant summary judgment on both of those claims and they are not at issue on review.

statement, plaintiff told the jury that he would prove: A group of his co-workers created a hostile work environment. He reported their misconduct to defendant's managers. Although the managers took some actions in response to the complaints, their actions were inadequate and ineffective. In order to work in a position other than the warehouse, plaintiff sought promotions, but did not receive any. Frustrated with defendant's failure to respond to his complaints about the discrimination and harassment, plaintiff filed a complaint with BOLI, which was dismissed because it was untimely. Shortly thereafter, plaintiff found a noose in his work area. He made an immediate report to management and then left work. Later, he reported the incident to the police.

Plaintiff filed a workers' compensation claim for acute stress. The claim was accepted, and plaintiff received treatment. Plaintiff's treatment provider eventually released plaintiff to return to work, and plaintiff requested reemployment.

After learning that plaintiff had filed this action, one of his co-workers, Staten, told defendant's managers that, four years earlier, plaintiff had sold him prescription drugs and had loaned him money, charging 50 percent interest. The managers investigated those claims. While the investigation was pending, defendant duty-stationed plaintiff at home. Based on the results of the investigation, defendant terminated plaintiff for misconduct.

In contrast to plaintiff's version of events, defendant explained in its opening statement that it had thoroughly investigated plaintiff's allegations of discrimination and harassment by his coworkers and had responded appropriately. Regarding plaintiff's report about the noose, defendant stated that a manager had determined that the noose was made of twine, which was used throughout the warehouse. The manager had conducted several interviews but had been unable to determine who put the noose where plaintiff saw it, how long it had been there, and whether it had been put there for plaintiff to discover. The police, who investigated the incident based on plaintiff's report, also were unable to make those determinations. Regarding

Staten's allegation that plaintiff had sold him prescription drugs, defendant explained that, when Staten reported the conduct, it investigated and determined that plaintiff in fact had sold the drugs to Staten, which was a violation of OLCC's policy regarding appropriate workplace behavior. Based on that and other conduct, defendant terminated plaintiff's employment.

Plaintiff presented his case-in-chief, after which defendant moved for a directed verdict on plaintiff's "failure to reemploy" claim. That claim was based on ORS 659A.046(1), which provides:

> "A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former regular employment shall, upon demand, be reemployed by the worker's employer at employment which is available and suitable."

In support of its motion, defendant argued that plaintiff was required to present, but had failed to present, evidence that defendant had available and suitable employment for plaintiff at the relevant time. In response, plaintiff conceded that he had not presented any such evidence but contended that he was not required to do so. The trial court accepted defendant's argument and granted defendant's motion for a directed verdict.

After the presentation of evidence, the trial court instructed the jury on the law governing plaintiff's remaining claims, *viz.*, his claims for employment discrimination, retaliation, and whistleblowing. Regarding the retaliation claim, the trial court instructed the jury that plaintiff had to prove that (1) plaintiff had opposed or reported racial discrimination or harassment in the workplace, (2) defendant had subjected him to "an adverse employment action," and (3) defendant had subjected him to the adverse employment action because of plaintiff's opposition to, or report of, racial discrimination or harassment in the workplace. Both parties submitted instructions that defined "adverse employment action." The trial court declined to give any of the proffered definitions, stating that it did not think that an instruction defining "adverse employment action" was necessary.

The trial court provided the jury with a verdict form. "Part I" of the form posed questions to the jury about each claim that was being submitted to it. "Part II" of the form asked, "What damages, if any, should plaintiff be awarded?" and included blank spaces for the jury to insert numbers for economic and noneconomic damages.

The jury rejected plaintiff's first claim; on the verdict form, it answered the questions about that claim in the negative, finding that defendant had not "intentionally discriminate[d] against plaintiff because of his race" and had not "subject[ed] plaintiff to a racially hostile work environment by his co-workers." The jury also rejected plaintiff's retaliation claim, finding that defendant had not "retaliate[d] against [plaintiff] for opposing or reporting racial discrimination or racial harassment."

But the jury accepted plaintiff's whistleblowing claim, finding that defendant had "take[n] adverse enforcement [*sic*] action against plaintiff because he in good faith reported information that he believed was a violation of a law, rule or other regulation." The jury was not asked to identify, and did not identify, the specific adverse action (or actions) that defendant had taken against plaintiff. Although the jury accepted plaintiff's whistleblowing claim, it declined to award him any monetary damages. On the verdict form, in the blanks for economic and noneconomic damages, the jury inserted "0."

The trial court read the completed verdict form aloud in court. Neither party objected to the verdict, and the jury was released. Plaintiff then made an oral request for equitable relief, asking the trial court to order defendant to reinstate him as an employee. The trial court denied the request. Approximately two weeks later, plaintiff filed a motion for compensatory and equitable relief. After a hearing, the trial court took the matter under advisement and later issued a letter opinion, simply stating that the motion was denied.

Plaintiff appealed, and the Court of Appeals affirmed. *Summerfield*, 294 Or App at 415. Plaintiff petitioned this court for review, which we allowed to address

three issues, specifically, whether the trial court erred in (1) granting defendant's motion for a directed verdict on plaintiff's reemployment claim, (2) declining to give plaintiff's requested jury instruction defining "adverse employment action" for the purposes of his retaliation claim, and (3) denying defendant's request for equitable relief on his whistleblowing claim. We address those issues in turn.

## II.   DISCUSSION

### A.   *Reemployment Claim—Elements of a* Prima Facie *Case*

We begin with the issue relating to plaintiff's reemployment claim. ORS 659A.046(1), set out below, 366 Or at 772-73, imposes a duty on employers to reemploy workers who have suffered compensable work injuries. In addition, ORS 659A.052(1)(c) provides that, if an injured worker was employed by a state agency, like defendant, the worker has a right to be reemployed at another state agency.[2] In this case, plaintiff alleged that defendant violated its duty under ORS 659A.046(1) because it had "failed to reemploy plaintiff in an available and suitable position after his repeated requests."

At trial, plaintiff contended that, under ORS 659A.052(1)(c), defendant had to find him other employment with the state once it was established that he could not return to work at OLCC. Plaintiff also presented evidence that OLCC's own policy on returning injured workers to work provides that OLCC "is committed to returning its employees who have compensable, work related injuries or illnesses to available and suitable work," and that it will take specific steps to do so, including "entering the employee's name on the statewide Injured Workers List, if suitable work at [OLCC] is not available." After plaintiff requested reemployment, defendant offered him a position doing maintenance work at OLCC, which plaintiff declined. Then,

---

[2] ORS 659A.052(1)(c) provides:

"[I]f all permanent restrictions of an injured worker are known and \*\*\* [t]he injured worker was employed at the time of injury by any agency of the executive or administrative department of the government of this state, the injured worker shall have the right to reinstatement or reemployment at any available and suitable position in another agency of the executive or administrative department."

when defendant initiated its investigation into Staten's allegations, defendant duty-stationed plaintiff at home. It did not place him in another position at OLCC, and it did not enter his name on the Injured Workers List.

After plaintiff's case-in-chief, defendant moved for a directed verdict on plaintiff's reemployment claim, arguing that plaintiff had failed to present any evidence that there had been available and suitable employment for him at either OLCC or another state agency during the relevant time period. Specifically, defendant argued that there was "zero evidence that there were any such openings."

Plaintiff acknowledged that "there's no evidence of such openings." But he argued that he was not required to produce such evidence. He asserted that he had presented evidence that OLCC had failed to take steps to reemploy him as required by its own policy, and he argued that that evidence was sufficient.

After reviewing the text of ORS 659A.046(1), the trial court told plaintiff that it appeared that he had to prove that, after he was released to work and had requested reemployment, defendant had an available and suitable position for him. Plaintiff countered that the absence of available and suitable employment was a defense. The trial court disagreed, concluding that the existence of available and suitable employment is an element of a reemployment claim. Because it was undisputed that plaintiff had presented "zero evidence" that there had been available and suitable employment, the trial court granted defendant's motion for a directed verdict.

On review, plaintiff renews the argument he made below. Therefore, the issue before this court is whether a plaintiff who brings a reemployment claim for a violation of ORS 659A.046 must prove not only that the defendant failed to reemploy the plaintiff, but also that there was an available and suitable position in which he could have been reemployed.

A plaintiff bears the burden of proving the elements of his or her claim. *Lindland v. United Business Investments*, 298 Or 318, 322-23, 693 P2d 20 (1984). Whether a fact is an

element of a claim depends on the substantive law defining the claim. *Id*. at 323 (quoting OEC 305 Commentary (1981)). Therefore, to determine what facts are elements of a reemployment claim, it is necessary to look to the statute that authorizes the claim, ORS 659A.885, and the statute that defines the duty to reemploy, ORS 659A.046.

ORS 659A.885 authorizes a person to bring a civil action if the person is aggrieved by certain unlawful employment practices, including violations of ORS 659A.046. It provides, in pertinent part:

"(1)   Any person claiming to be aggrieved by an unlawful practice specified in subsection (2) of this section may file a civil action in circuit court. ＊＊＊

"(2)   An action may be brought under subsection (1) of this section alleging a violation of:

"(a)   ＊＊＊ [*ORS*] *659A.046*."

(Emphasis added.) Thus, when a plaintiff brings a civil action pursuant to ORS 659A.855, the plaintiff is alleging that the defendant violated a statutory duty. "[T]o prove a claim for statutory liability, the plaintiff must establish," among other things, that "a statute imposed a duty on the defendant" and "the defendant violated the duty." *Deckard v. Bunch*, 358 Or 754, 759-60, 370 P3d 478 (2016). Here, plaintiff alleged that defendant violated its duty to reemploy under ORS 659A.046.

ORS 659A.046 requires an employer, in certain circumstances, to reemploy an injured employee. Of particular relevance here, subsection (1) establishes an employer's reemployment duty and subsection (3) identifies when that duty terminates:

"(1)   A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former regular employment shall, upon demand, be reemployed by the worker's employer at employment which is available and suitable.

"＊＊＊＊＊

"(3)   Notwithstanding subsection (1) of this section, the right to reemployment under this section terminates when whichever of the following events first occurs:

"(a)   The worker cannot return to reemployment at any position with the employer either by determination of the attending physician or a nurse practitioner authorized to provide compensable medical services  under ORS 656.245 or upon appeal of that determination, by determination of a medical arbiter or panel of medical arbiters pursuant to ORS chapter 656.

"(b)   The worker is eligible and participates in vocational assistance under ORS 656.340.

"(c)   The worker accepts suitable employment with another employer after becoming medically stationary.

"(d)   The worker refuses a bona fide offer from the employer of light duty or modified employment that is suitable prior to becoming medically stationary.

"(e)   Seven days elapse from the date that the worker is notified by the insurer or self-insured employer by certified mail that the worker's attending physician or a nurse practitioner authorized to provide compensable medical services under ORS 656.245 has released the worker for reemployment unless the worker requests reemployment within that time period.

"(f)   Three years elapse from the date of injury."

By its terms, ORS 659A.046(1) requires an employer to reemploy an injured employee "at employment which is available and suitable." As such, it creates a limited duty on an employer. An employer is not required to reemploy an employee in *any* position; instead, an employer is required to reemploy an employee in *an available and suitable* position. The existence of available and suitable employment is a core component of the duty to reemploy defined by ORS 659A.046(1). It is not a limitation on, or an exception to, that duty.

The whole of ORS 659A.046(1) supports that conclusion. It identifies the circumstances that give rise to an employer's duty to reemploy an injured worker. Consequently, a plaintiff making a reemployment claim must prove that (1) he sustained a compensable injury, (2) he was disabled from performing the duties of his former regular employment, (3) he demanded reemployment, and, after the demand, (4) there was an available and suitable position for

him, and (5) the employer failed to reemploy him. Each of those facts is a "necessary ingredient" of any claim that an employer violated its duty to reemploy an injured worker. *See State v. Vasquez-Rubio*, 323 Or 275, 278-79, 917 P2d 494 (1996) (quoting *State v. Tamler & Polly*, 19 Or 528, 530, 25 P 71 (1890), for the proposition that the state, as the plaintiff in a criminal case, must plead and prove facts set out in the statute defining an offense that are "necessary ingredient[s]" of the offense, but not facts that are "mere matter[s] of excuse or defense"). Thus, the text of ORS 659A.046(1) shows that the existence of available and suitable employment is part of the basic definition of the duty to reemploy; as such, it is a fact that the plaintiff must prove to establish a violation of that duty.[3]

ORS 659A.046(3) provides contextual support for that conclusion. As set out above, ORS 659A.046(3) lists

---

[3] Others have reached the same conclusion and, although their decisions are not binding on this court, they support our view that the text of ORS 659A.046(1) establishes that the existence of available and suitable employment is an element of a reemployment claim. The United States District Court for the District of Oregon has held:

"In order to state a *prima facie* case of failure to reemploy under ORS § 659A.046, an employee must show that (1) the employee suffered a compensable on-the-job injury, (2) the employee was disabled from performing the duties of her former position, (3) the employee made a timely demand for reemployment, (4) *at the time of that demand a suitable position was available*, and (5) the employer failed to reemploy the employee in the available suitable position."

*Davis v. Tri-Cty. Metro. Transp. Dist. of Or.*, 45 F Supp 3d 1222, 1243 (D Or 2014) (emphasis added).

Likewise, the Oregon Uniform Civil Jury Instructions require a plaintiff making a reemployment claim based on ORS 659A.046 to prove that the defendant had available and suitable employment for the plaintiff. Uniform Civil Jury Instruction 58.03 provides:

"The plaintiff claims that the defendant failed to reemploy [him / her] to an available and suitable position.

"To recover, *the plaintiff must prove all of the following*:

"* * * * *

"(3) The plaintiff made a timely demand for reemployment;

"(4) *A position was available at the time of the demand*;

"(5) *That position was suitable*; and

"(6) The defendant failed to reemploy the plaintiff in the available and suitable position."

(Emphases added.)

circumstances in which an employer's duty to reemploy an employee terminates. The fact that the legislature set those circumstances out separately from the circumstances that give rise to the duty to reemploy indicates that, if the legislature had intended to create an exception to the duty to reemploy or a defense for failing to perform that duty, it would have done so in a separate section or used language indicating that it was creating an exception or a defense. But it did not. Nothing in the text of ORS 659A.046 indicates that a plaintiff can make a *prima facie* case that the defendant failed to reemploy the plaintiff in violation of ORS 659A.046(1) without presenting evidence that there had been an available and suitable position in which the defendant could have reemployed the plaintiff.

    In arguing that the trial court in this case erred by granting defendant's motion for a directed verdict on his reemployment claim, plaintiff asserts that an employee does not bear the "burden" of finding a position in which he can be reemployed. Specifically, he asserts that an employee seeking reemployment has "no burden * * * to do anything other than make the appropriate demand for reemployment and then to follow the instructions of the employer. There is no obligation placed on the injured worker to find his own suitable job." In support of that proposition, plaintiff cites *Robinson v. School District No. 1*, 92 Or App 627, 759 P2d 1116 (1988). In that case, the Court of Appeals stated that the reemployment statute "unambiguously requires that, on demand of an injured employee, the employer must offer the employee a suitable job when it becomes available." *Id*. at 630.[4] Plaintiff also cites an administrative rule, OAR 839-006-0135(6), which states, "At the time of the injured worker's demand for reemployment, a suitable position may not be available. When this occurs, the injured worker must follow the employer's reporting policy until the employer offers the injured worker an available, suitable position." Relying on those sources, plaintiff argues, "There is a burden placed on the employer to be aware of the availability of suitable reemployment so that the employer can offer the suitable

---

    [4] *Robinson* construed *former* ORS 659.420(1) (1985), *renumbered as* ORS 659A.046(1) (2001). The text of the two sections does not differ in any way that is material to our analysis.

job to the employee when it becomes available." Relatedly, he argues, "[T]he only burden on the employee is to wait patiently; there is no affirmative duty placed on an employee to find his own job with the employer."

Those propositions are correct, but inapposite in this case. As defendant argues, "Plaintiff mistakes an employer's obligation to identify suitable work in response to an injured worker's demand with his obligation at trial to prove his statutory claim under ORS 659A.046." Although an employer has a duty to reemploy an injured worker in some circumstances, when a worker brings a civil action alleging that his employer violated that duty, the worker bears the burden of proving that the circumstances that give rise to the duty existed. As discussed above, the existence of available and suitable employment is an element of a reemployment claim, and, consequently, a plaintiff bears the burden of production and persuasion on it. OEC 305 ("A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."); OEC 307(2) ("The burden of producing evidence as to a particular issue is initially on the party with the burden of persuasion as to that issue.").

Plaintiff also argues that, because an employer will know what positions it has, it should bear the burden of proving that it did not have any available and suitable positions. But the fact that a defendant may have superior access to evidence is not a sufficient basis to transfer the burden of producing evidence from the plaintiff to the defendant. *See* 2 *McCormick on Evidence*, § 337 (8th ed 2020) ("Very often one must plead and prove matters as to which his adversary has superior access to the proof. Nearly all the required allegations of the plaintiff in actions for tort or breach of contract relating to the defendant's acts or omissions describe matters peculiarly in the defendant's knowledge.").[5]

---

[5] As a practical matter, an employee filing a reemployment claim will be able to obtain evidence regarding available positions through discovery, including requests for production of documents disclosing job openings and depositions of those responsible for posting and filling openings. An employee may also be able to rely on his own knowledge of the employer's staffing needs and practices.

In sum, the existence of available and suitable employment is an element of a plaintiff's reemployment claim. Therefore, a plaintiff bears the burden of production and persuasion with respect to that fact.

In this case, plaintiff conceded that he presented "zero" evidence of that fact.[6] When there is no evidence from which a reasonable trier of fact could find facts sufficient to establish an element of the party's claim, the opposing party is entitled to a directed verdict on the claim. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). Consequently, the trial court did not err in granting defendant's motion for a directed verdict on plaintiff's reemployment claim.

### B.   *Retaliation Claim—Jury Instruction*

The second issue that we allowed review to consider is whether the trial court erred in instructing the jury on plaintiff's retaliation claim. That claim was based on ORS 659A.030(1)(f), which provides that it is an unlawful employment practice

"[f]or any person to discharge, expel, or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

At trial, the parties agreed to an instruction on the elements of plaintiff's retaliation claim, and the trial court gave that agreed-upon instruction, which stated:

"Retaliation, elements and burden of proof: The plaintiff seeks damages against the defendant for retaliation. The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence.

"One, the plaintiff engaged in or was engaging in an activity protected under law; that is, opposing or reporting racial discrimination and/or harassment in the workplace.

"Two, *the employer subjected the plaintiff to an adverse employment action*. And, three, the plaintiff was subjected

---

[6]  Plaintiff did not argue that the evidence he presented was sufficient to support a reasonable inference that there was an available and suitable position available for him at either OLCC or another state agency at the relevant time.

to the *adverse employment action* because of his opposition to or report of—or reports of racial discrimination and/or harassment in the workplace."

(Emphases added.) Plaintiff also requested the following instruction defining "adverse employment action":

> "*An action is an adverse employment action* if a reasonable employee would have found the action materially adverse, which means *it might have dissuaded* a reasonable worker from making or supporting a charge of discrimination."

(Emphases added.) The trial court declined to give plaintiff's requested instruction. Instead, it opted not to define "adverse employment action."[7]

The trial court provided the jury a verdict form that set out questions about each of plaintiff's claims. The question regarding plaintiff's retaliation claim asked, "Did defendant retaliate against plaintiff for opposing or reporting racial discrimination or racial harassment?" The jury answered, "No."

Generally, a "party is entitled to a jury instruction on its theory of the case if the requested instruction correctly states the law, is based on the operative pleadings, and is supported by the evidence." *Ossanna v. Nike, Inc.*, 365 Or 196, 212-13, 445 P3d 281 (2019) (citing *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998)). In this case, there is no dispute that plaintiff's requested instruction was based on the pleadings and was supported by the evidence. The only dispute is whether it is a correct statement of law.

Plaintiff's requested instruction is based on the Supreme Court's decision in *Burlington N. & S. F. R. Co. v. White*, 548 US 53, 126 S Ct 2405, 165 L Ed 2d 345 (2006), which concerned a retaliation claim under 42 USC section 2000e-3(a), the antiretaliation provision of Title VII of the Civil Rights Act of 1964. In *Burlington*, the Court held that a plaintiff alleging a retaliation claim under Title VII "must show that a reasonable employee would have found the

---

[7] As mentioned, 366 Or at 768, the trial court also declined to give an instruction defendant requested defining "adverse employment action."

challenged action materially adverse, which in this context means *it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.*" 548 US at 68 (emphasis added) (internal quotation marks omitted).

In *PSU Association of University Professors v. PSU*, 352 Or 697, 291 P3d 658 (2012), when determining what a plaintiff must prove to establish a retaliation claim under ORS 659A.030(1)(f), this court repeatedly referred to *Burlington*, noting that that case provided useful context for ORS 659A.030(1)(f), given that the purposes of ORS 659A.030(1)(f) and the antiretaliation provision in Title VII are similar. *Id*. at 711-13. At one point, the court quoted *Burlington*'s rule: that to establish that an employee was subjected to an adverse employment action for the purposes of Title VII, the employee "must show that 'a reasonable employee would have found the challenged action *materially adverse*,' meaning that the challenged action '*well might have dissuaded* a reasonable worker from making or supporting a charge of discrimination.'" *PSU Association*, 352 Or at 722 (quoting *Burlington*, 548 US at 68) (first emphasis in *PSU Association*, second emphasis added). However, at another point, the court paraphrased the *Burlington* holding, stating that the Supreme Court had held that the antiretaliation provision of Title VII applied to all employer actions that "*reasonably would deter* a victim of discrimination from pursuing the remedial mechanisms available under Title VII." *PSU Association*, 352 Or at 712 (emphasis added). Thus, in *PSU Association*, this court quoted *Burlington* as holding that an adverse employment action is one that "well might have dissuaded" a reasonable worker from making or supporting a charge of discrimination, but later described the case as defining an adverse employment action as one that "would reasonably deter" a victim of discrimination from taking such action. Finally, this court held that ORS 659A.030(1)(f) "restricts an employer from engaging in retaliatory activity that *reasonably would impede or deter* employees from pursuing their rights under [ORS chapter 659A]." 352 Or at 713 (emphasis added).

Defendant argues that, despite extensively quoting and paraphrasing *Burlington*, this court established a

higher standard for an adverse employment action for the purposes of ORS 659A.030(1)(f) in *PSU Association* than the Supreme Court established for the purposes of Title VII in *Burlington*. Defendant notes that, in *Burlington*, the Supreme Court referred to actions that "well might have dissuaded" a victim from pursuing a remedy, but in *PSU Association* this court stated the rule in terms of actions "that reasonably would impede or deter." In defendant's view, the former "indicates that there is a possibility that something will happen, and the latter indicates that there is a probability that something will happen." Based on that premise, defendant argues that plaintiff's requested instruction in this case, which was based on *Burlington*, does not accurately reflect Oregon law under *PSU Association*.

We disagree with defendant's reading of *PSU Association*. In *PSU Association*, this court used the phrases "well might" and "reasonably would" interchangeably, which indicates that it intended the phrases to express the same standard. Had the court intended the phrase "reasonably would" to establish a higher standard than "well might," it would not have used "reasonably would" in describing the purportedly lower standard in *Burlington*. Additionally, it held that ORS 659A.030(1)(f) prohibits retaliatory actions that "reasonably would" deter an employee from pursuing his or her statutory rights, the same phrase it used to describe the holding in *Burlington*. The fact that it used "reasonably would" to describe both the *Burlington* standard and the ORS 659A.030(1)(f) standard indicates that it did not announce a different standard. *See McLaughlin v. Wilson*, 365 Or 535, 551, 449 P3d 492 (2019) (explaining that *PSU Association* "noted the similarity of our standard to the standard in *Burlington*").[8]

Consequently, defendant's argument that plaintiff's requested instruction regarding the meaning of "adverse employment action" is incorrect is unavailing. In *PSU Association*, this court adopted the *Burlington* standard for establishing such an action, and plaintiff's requested

---

[8] That conclusion is also consistent with how the Court of Appeals has interpreted *PSU Association*. *See Meyer v. Oregon Lottery*, 292 Or App 647, 679, 426 P3d 89 (2018) (citing *PSU Association* as "adopting the *Burlington* 'materially adverse' standard" for claims made under ORS 659A.030(1)(f)).

instruction is consistent with that standard.[9] Because the instruction was a correct statement of the law, was based on the pleadings, and was supported by the evidence, the trial court erred in declining to give it.[10]

That conclusion leads us to defendant's alternative argument: that the failure to give the instruction was harmless. *See* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."); *see also* Or Const, Art VII (Amended), § 3. An error in failing to give a requested instruction "is harmless if there is little likelihood that the error affected the verdict." *Ossanna*, 365 Or at 219 (internal quotation marks omitted). Conversely, an error in failing to give an instruction is prejudicial if it "probably created an erroneous impression of the law in the minds of the jury and if that erroneous impression may have affected the outcome of the case." *Id*. (internal quotation marks omitted). When determining whether an instructional error is harmless, this court considers the instructions "as a whole" and "in the context of the evidence at trial and the parties' theories of the case with respect to the various charges, claims, and defenses at issue." *Purdy v. Deere and Company*, 355 Or 204, 227-28, 324 P3d 455 (2014) (internal citation omitted).

In this case, defendant argues that the failure to give plaintiff's requested instruction defining "adverse employment action" was harmless given the parties' theories regarding the retaliation claim. Plaintiff's theory was that defendant, his employer, took actions against him at work because he opposed and reported racial discrimination and racial harassment. In closing argument, he told the jury that they had heard evidence about "a lot of adverse

---

[9] Under *Burlington*, an action is adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and plaintiff's instruction stated that an action is adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." We acknowledge that the *Burlington* definition begins with "well might have," as opposed to "might have," but we do not view the use of the word "well" as requiring a probability, as defendant argues.

[10] Plaintiff also requested an alternative instruction defining "adverse employment action," using similar language taken from *Burlington*. In light of our conclusion that the trial court erred in declining to give the instruction discussed above, we do not address plaintiff's alternative instruction.

employment actions," including "failure to promote," "failure to train," and "other slights in the workplace." Defendant did not dispute that those actions would constitute "adverse employment actions." Instead, defendant disputed that it took those actions because plaintiff had opposed and reported racial discrimination and racial harassment. For example, defendant did not dispute that it failed to promote plaintiff, but it argued that it did so because "a more qualified individual was hired" for that job. Similarly, defendant did not dispute that it terminated plaintiff, but it argued that it "terminated [plaintiff's] employment for violating its policies and procedures." Thus, the parties' disagreement was not about whether the actions were adverse to plaintiff; rather, it was about why defendant took them.

As the trial court instructed the jury, to establish his retaliation claim, plaintiff had to prove three elements: (1) he engaged in an activity protected by law, that is, he opposed or reported racial discrimination or racial harassment, (2) defendant subjected him to an adverse employment action, and (3) defendant subjected him to the adverse employment action because of plaintiff's opposition to or report of racial discrimination or racial harassment. Given that defendant did not dispute the second element, it does not appear that the trial court's failure to define "adverse employment action" could have affected the jury's verdict on the claim.

Plaintiff suggests that, regardless of the fact that defendant did not dispute that an adverse employment action had been taken, the jury might have misunderstood what constitutes an "adverse employment action." He points out that the trial court used the phrase in connection with both his retaliation claim, which was based on ORS 659A.030(1)(f), and his whistleblowing claim, which was based on ORS 659A.199. The retaliation statute and the whistleblowing statute cover different categories of conduct, as plaintiff notes. As just discussed, the retaliation statute covers conduct that "well might *** dissuade[] a reasonable worker from making or supporting a charge of discrimination." *PSU Association*, 352 Or at 722 (quoting *Burlington*, 548 US at 68). But the whistleblowing statute covers only a subset

of that conduct; specifically, it covers conduct that relates to the "terms, conditions, or privileges of employment." ORS 659A.199(1). Plaintiff contends that, given the way the trial court instructed the jury, the jury might have erroneously concluded that, to prevail on his retaliation claim, plaintiff had to prove that defendant took adverse actions against him relating to the "terms, conditions, or privileges of [his] employment" when, in fact, he had to prove only that defendant took actions that "might well have dissuaded a reasonable person" from opposing or reporting racial discrimination or racial harassment.

We understand plaintiff's contention and agree that trial courts should be clear about the differences between the elements of a retaliation claim under ORS 659A.030(1)(f) and a whistleblowing claim under ORS 659A.199. But we cannot conclude that the trial court's jury instructions in this case were prejudicial. Even assuming that the jury could have understood "adverse employment action" to cover only actions relating to the terms, conditions, or privileges of employment, plaintiff has not identified any adverse actions by defendant that he relied on to support his retaliation claim that would fall outside that category. Indeed, at trial, plaintiff did not differentiate between the actions by defendant that he was relying on to support his retaliation claim and the actions he was relying on to support his whistleblowing claim. He generally treated the two claims as one and the same. He argued that he engaged in protected activities and defendant responded by taking retaliatory actions, and he relied on the same protected activities and retaliatory actions for both claims. Thus, plaintiff's position throughout the proceedings was that the retaliatory actions he identified were sufficient to prove both his retaliation claim (which covered a broader category of retaliatory actions) and his whistleblowing claim (which covered a narrower category of retaliatory actions).

Moreover, the jury found for plaintiff on the whistleblowing claim, which means that the jury found that defendant had taken an action against plaintiff that fell within the narrower category of retaliatory actions covered by the whistleblowing statute. Considering the identity between

the protected activities that plaintiff relied on as the basis for both his whistleblowing claim and his retaliation claim, the jury necessarily found that defendant had taken an adverse action against him that fell within the broader category of conduct covered by the retaliation statute. Given that the jury actually found that defendant had taken an adverse employment action against plaintiff, we conclude that the trial court's failure to define that phrase was harmless.

C.   *Whistleblowing Claim—Entitlement to Equitable Relief*

The third and final issue in this case is whether the trial court erred in denying plaintiff equitable relief on his whistleblower claim. As recounted above, plaintiff brought that claim pursuant to ORS 659A.885(1), which authorizes civil actions for violations of certain antidiscrimination statutes, including ORS 659A.199(1), which provides:

> "It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

Throughout the proceedings, plaintiff had identified several actions that he contended defendant took in retaliation against him for whistleblowing. Those actions included subjecting plaintiff to "slights in the workplace," giving plaintiff undesirable work assignments, failing to train and promote plaintiff, investigating plaintiff for workplace misconduct, duty-stationing plaintiff at home, and ultimately terminating plaintiff's employment. But the verdict form did not specify what action or actions the jury had found that defendant took in retaliation against plaintiff. Thus, it is unclear whether the jury found that defendant retaliated against plaintiff for whistleblowing by, for example, giving him undesirable work assignments or by terminating him.

As mentioned, although the jury found that defendant had retaliated against plaintiff for whistleblowing, it did not award plaintiff any monetary damages. After the

jury's verdict was received and the jury was dismissed, plaintiff made an oral motion for equitable relief in form of reinstatement, which the trial court denied.

Weeks later, plaintiff filed a motion seeking compensatory damages and equitable relief. As compensatory damages, he sought lost wages and counseling costs. As equitable relief, he sought front pay, which is an equitable remedy that a court can award when reinstatement is not possible. Noting that the trial court had denied his request for reinstatement, plaintiff requested two years of front pay. Also as equitable relief, plaintiff requested injunctions; specifically, he asked the trial court to enjoin defendant from "engaging in further illegal practices" and to order defendant "[to] take appropriate steps to ensure such conduct does not occur again, including any post-termination retaliation against plaintiff."

Defendant filed a response to plaintiff's motion, arguing against each type of relief plaintiff had requested. Defendant asserted that awarding plaintiff compensatory damages on a theory that defendant caused plaintiff financial losses would be inconsistent with the jury's verdict. Regarding front pay, defendant asserted that plaintiff was essentially seeking reconsideration of the trial court's earlier denial of reinstatement and that front pay was beyond the scope of the pleadings.[11] Finally, regarding plaintiff's request for injunctive relief, defendant asserted that plaintiff's request was "moot" because plaintiff was no longer employed by defendant; that there "was no legal basis for an injunction or order that essentially tells a party to 'follow the law'"; and that plaintiff had neither alleged nor established that defendant would retaliate against him in the future, so any injunction would be based on speculation.

Plaintiff filed a reply. He asserted that the trial court could award front pay in lieu of reinstatement. Regarding his request for injunctive relief, plaintiff acknowledged that an injunction is appropriate only if a threatened injury is "'of a real and substantial character.'" (Quoting *Wilson v. Parent*,

---

[11] During the trial, plaintiff moved to amend his complaint to allege front pay and the trial court denied that motion.

228 Or 354, 370, 365 P2d 72 (1961).) "'[I]t must appear that the danger is probable or threatened.'" (Quoting *McCombs v. McClelland*, 223 Or 475, 485, 354 P2d 311 (1960).) Plaintiff asserted that there was a risk that defendant would "offer potential employers negative references for plaintiff." Based on that assertion, plaintiff suggested that the trial court could issue an order "specifying that no negative job references are to be given when prospective employers call," "an order *** not to interfere with plaintiff's potential future employment with the State," and "an order *** requiring mandatory training for OLCC employees about whistle-blower retaliation."

The trial court held a hearing on plaintiff's motion, after which it took the matter under advisement. It subsequently issued a letter opinion denying the motion.

On review, the issue is whether the trial court erred in denying plaintiff equitable relief. Plaintiff asserts that, because the jury found that defendant had retaliated against him for whistleblowing but did not award him any damages, the trial court was required to award him equitable relief.

When, as here, a plaintiff has brought an action pursuant to ORS 659A.885(1), a trial court "*may* order injunctive relief and any other equitable relief that may be appropriate, including but not limited to reinstatement or the hiring of employees with or without backpay." (Emphasis added.) Thus, a trial court has discretion regarding whether to order equitable relief, even if the relief is appropriate. Consequently, we review a trial court's decision regarding whether to order equitable relief for an abuse of discretion. The party challenging a trial court's exercise of discretion bears the burden of proving that the trial court abused its discretion.[12]

In this case, plaintiff's argument regarding his entitlement to equitable relief is limited and categorical.

---

[12] To be clear, the issue is not whether the trial court *could have* ordered equitable relief; rather, it is whether the trial court abused its discretion in not awarding such relief. That is, the issue is whether, given plaintiff's requests, the evidence, and the parties' arguments, the trial court had no choice but to order equitable relief.

Plaintiff asserts "[w]hen a plaintiff seeks both monetary damages and equitable relief under ORS [chapter] 659A, and the jury returns a verdict in plaintiff's favor but awards no monetary relief, plaintiff is entitled to equitable relief." Plaintiff bases his argument on a general statement in *Ballinger v. Klamath Pacific Corp.*, 135 Or App 438, 898 P2d 232 (1995).

In *Ballinger*, the trial court concluded that the plaintiffs had established that the defendants had engaged in sex discrimination, but the trial court did not grant the plaintiffs any relief because, in its view, the plaintiffs had not made reasonable efforts to resolve the problem. The Court of Appeals reversed, holding that the trial court had erred, as a matter of law, "when it imposed a 'reasonable effort' requirement and barred recovery of lost wages on that basis." *Id*. at 450; *id*. at 451 n 10 ("We remand in this case because [the trial] court erred, *as a matter of law*, when it treated 'reasonable effort' as if it were a prerequisite to an award[.]" (Emphasis in original.)). In doing so, the Court of Appeals stated that "[p]laintiffs either establish discrimination or they do not. Here, they did. *Once discrimination is established, plaintiffs are entitled to relief * * *.*" *Id*. at 448 (emphasis added).

Based on the italicized statement, plaintiff asserts that a trial court "does not have discretion to deny relief once [an] unlawful practice has been established." That argument is unavailing. First and obviously, *Ballinger* is not binding on this court. Second and more importantly, as explained below, *Ballinger* did not involve the same issue as this case; it did not involve whether a trial court could, as an exercise of its discretion, deny equitable relief.

Given the issue in *Ballinger* and the Court of Appeals' explanation of its reasoning, *Ballinger* cannot be read as establishing the categorial rule for which plaintiff cites it. Thus, *Ballinger* does not support plaintiff's claim of error and, because plaintiff has not developed an argument based on any other authority, plaintiff has failed to establish that the trial court abused its discretion in denying him equitable relief.

That conclusion does not end our analysis, however, because *amicus curiae*, Oregon Trial Lawyers Association (OTLA), has proffered an argument in support of plaintiff's claim based on other authorities. Relying on federal cases involving Title VII, which also includes a provision authorizing civil actions for violations of antidiscrimination statutes, OTLA argues that the trial court erred in denying plaintiff either of two types of equitable relief. Specifically, OTLA argues that "the trial court abused its discretion *** by denying plaintiff either reinstatement or front pay." OTLA points out that ORS 659A.885 was based on a similar provision in Title VII and, as this court stated in *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 99, 689 P2d 1292 (1984), was intended to provide "parallel" remedies to that federal provision. Therefore, OTLA argues, federal cases interpreting the federal provision are instructive when interpreting ORS 659.885. According to OTLA, federal cases establish two general rules relevant here. First, OTLA asserts, they establish that "where the fact-finder finds illegal conduct resulting in wage-loss, plaintiffs are generally entitled to back pay." (Citing *Albermarle Paper Co. v. Moody*, 422 US 405, 421, 95 S Ct 2362, 45 L Ed 2d 280 (1975); *EEOC v. Joint Apprenticeship Comm'n.*, 186 F3d 110, 122 (2d Cir 1999); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F3d 1244, 1251 (11th Cir 1997); *Pegues v. Mississippi State Emp't Serv.*, 899 F2d 1449, 1457 (5th Cir 1990).) Second, OTLA asserts, they establish that "a plaintiff will generally be entitled to front pay when he or she has been unlawfully terminated by where reinstatement is not a viable option." (Citing *Bogan v. MTD Consumer Grp. Inc.*, 919 F3d 332, 336-37 (5th Cir 2019); *Weaver v. Casa Gallardo, Inc.*, 922 F2d 1515, 1528 (11th Cir 1991).) Thus, OTLA's argument is that, when a plaintiff establishes that a defendant violated an antidiscrimination statute and the violation resulted in wage loss or termination, the defendant is generally entitled to equitable relief in the form of back pay, reinstatement, or front pay (or some combination of those forms of relief).

Defendant does not dispute that ORS 659A.885 was based on Title VII and that federal cases can be instructive, and we do not hold otherwise. But, even assuming *arguendo*

that the general rules OTLA draws from the federal cases also apply to ORS 659A.885, those rules do not establish that the trial court erred in this case. As is apparent from the rules themselves (as articulated by OTLA), the rules apply to certain types of violations: those that result in wage loss or termination. Indeed, all the cases cited by OTLA in support of the rules involved those types of violations. *Joint Apprenticeship Comm'n.*, 186 F3d at 122 (2d Cir 1999) ("An applicant denied employment in violation of Title VII is ordinarily entitled to an award of back pay from the date of the discriminatory action to the date of judgment."); *Massey Yardley Chrysler Plymouth, Inc.*, 117 F3d at 1251 (stating that once liability for constructive discharge is established, a plaintiff is presumptively entitled to back pay from the date of discharge until the date of judgment); *Pegues*, 899 F2d at 1458 (upholding an award of back pay for plaintiffs who were denied job opportunities in violation of Title VII); *Bogan*, 919 F3d at 339-40 (reversing trial court's denial of reinstatement of plaintiff who had been unlawfully terminated because trial court had relied on improper factors); *Weaver*, 922 F2d at 1529-30 (affirming back pay award for plaintiff who had been passed over for promotions and terminated in violation of Title VII).

        The difficulty with OTLA's argument in this case is that it is not clear what type of violation the jury found; specifically, it is not clear whether the jury found that defendant had retaliated against plaintiff in a way that resulted in wage loss or termination. As mentioned, plaintiff argued that defendant had retaliated against him in several ways. Not all those actions resulted in wage loss or termination. The jury could have found, for example, that defendant retaliated against plaintiff through "slights in the workplace" or undesirable job assignments, in which case backpay, reinstatement, or front pay would not be appropriate. Given the way the case was litigated and the lack of specificity of the jury's verdict, the general rules OTLA proffers do not establish that the trial court abused its discretion in this case. Nothing in those rules or the cases from which OTLA derives them supports the conclusion that the trial court was required to either reinstate plaintiff or award him front pay, as OTLA argues.

In sum, neither plaintiff's argument nor OTLA's argument establish that the trial court abused its discretion in denying plaintiff equitable relief. Plaintiff's categorical argument that a trial court must always order equitable relief in circumstances like this is unsupported, and OTLA's argument that equitable relief is required for certain types of violations does not account for the fact that, in this case, it is not clear that the jury found any of those types of violations. Therefore, we conclude that plaintiff, either on his own or as aided by OTLA, has not carried his burden of proving that the trial court's denial of equitable relief requires reversal.

## III.   CONCLUSION

In sum, we conclude that the trial court did not err in granting defendant a directed verdict on plaintiff's reemployment claim; plaintiff bore the burden of proving that defendant had available and suitable employment for him and plaintiff conceded that he had not done so. We also conclude that, although the trial court erred in failing to instruct the jury on the meaning of "adverse employment action" for the purposes of plaintiff's retaliation claim, the error was harmless because there was no dispute that the actions plaintiff relied on to support his retaliation claim were adverse employment actions and the jury actually found that defendant had committed an adverse employment action. Finally, we conclude that plaintiff has not established that, under the circumstances of this case, the trial court abused its discretion in declining to award plaintiff equitable relief.

The decision of the Court of Appeals and the judgment of the trial court are affirmed.