Argued October 15, decided October 23, 1913.

# TAMM v. SAUSET.*

(135 Pac. 868.)

**Master and Servant—Injuries to Servant—Liability of Master—Employers' Liability Act.**

Under employers' liability act (Laws 1911, p. 16), providing that owners, contractors, subcontractors, corporations, or any persons whatsoever "engaged" in certain activities shall be liable for injuries to employees, and shall see that the materials employed and appliances used are carefully selected and tested, only that member of the class enumerated who is engaged in the undertaking at the time of the injury is liable for a failure to provide proper appliances, and hence a contractor is not liable for injuries sustained by a servant of a subcontractor through the latter's negligence.

From Multnomah: HENRY E. McGINN, Judge.

Department 2. This is an action by Jesse Tamm against K. Sauset and McDermott & Carmody Contracting Company, a corporation, to recover for a personal injury, in which the jury assessed plaintiff's damages at $6,000, and from the resulting judgment defendants appeal. The facts are set forth in the opinion.                REVERSED.

For appellants there was a brief over the names of *Malarkey, Seabrook & Scott,* and *Mr. C. C. Wilson,* with an oral argument by *Mr. Ephraim B. Seabrook.*

For respondent there was a brief over the name of *Rauch & Senn,* with an oral argument by *Mr. Frank S. Senn.*

MR. JUSTICE McNARY delivered the opinion of the court.

This is an action to recover damages for an injury to the person of plaintiff, sustained in August, 1911, while engaged upon the construction of a sewer in

---

*As to the liability of one contractor to servants of another working on same premises, see note in 46 L. R. A. 94.                REPORTER.

Corvallis. The city had let the contract to the defendant, K. Sauset, who subcontracted to defendants McDermott & Carmody Contracting Company, a corporation. A description of the work includes: First, the excavation; second, the construction of the arch and of the sides of the sewer. At the bottom of the sewer were inverted trenches, which were filled with concrete in order to form a permanent and substantial foundation for the sewer. In the construction work a gang of men with a steam shovel excavated the sewer ditch, followed by a crew operating a hoisting engine, who dug the invert in the bottom of the ditch and filled it with concrete, followed lastly, by artisans who constructed the brick and concrete work of the arch and sides of the sewer. At a time coincident with the accident, plaintiff, with other workmen, was engaged in moving the hoist from one portion of the work to another, requiring the use of a rope and capstan. One end of the rope was attached to the engine, the other wound around the capstan, which was firmly anchored to a "deadman." As the capstan revolved, it was the duty of plaintiff to take up the slack from the rope as it was unwound. Plaintiff took the position in his pleadings, and offered evidence in support thereof, that the rope supplied him was old, frayed and worn out, being at one particular place spliced, where a loose strand hung therefrom, rendering it defective and dangerous, and that the unraveled strand of the rope became entangled on the "niggerhead" of the capstan, resulting in his arm being thrown over the "niggerhead," and thereby crushed and broken in several places. As a separate act of negligence, plaintiff alleges that the engineer who was running the engine was absent therefrom at the time of the accident, and on that account was unable to stop the engine in time to prevent plaintiff's injury.

Counsel for defendants take the side of the case that K. Sauset was the original contractor, and that McDermott & Carmody Contracting Company was an independent contractor, owning all the machinery, rope, tools and appliances used on the work; that K. Sauset had no contract with or owed no duty toward plaintiff, having no control or authority over the subcontractor. At the proper time, counsel for defendants interposed a motion for an order of nonsuit on behalf of K. Sauset, which the court overruled, and submitted the case to the jury, which returned a verdict for plaintiff in the sum of $6,000.

The one issue involved is whether defendant K. Sauset can avail himself of the defense of independent contractor. The pleadings examined in the light of the employers' liability act (Laws 1911, p. 16) show plainly that the action is founded upon and comes within the purview of that enactment. Counsel for defendants, as decisive of their contention, rely upon the case of *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314), which was an action to recover damages for a personal injury claimed to have been caused by defendant's negligence. The stage of action is well set by Justice MOORE in the following language:

"That on March 30, 1911, the time of the accident, Lieth and Hecker were the owners of a tract of land at the northeast corner of Grand Avenue and East Stark Street, Portland, Oregon, and prior thereto they had entered into a contract with the corporation, whereby it engaged to erect for them a building on the premises. In order to secure an adequate foundation for the structure, it became necessary to drive in the earth piling, upon the top of which the foundation might rest, whereupon the corporation made a contract with Davidson, by the terms of which it agreed to supply the piling, and he stipulated to furnish them

the machinery and labor necessary to perform that part of the work. The piles were to be driven according to the plans and specifications, but such drawings and detailed statements were deviated from by the corporation's foreman, who changed the location of some of the supporting timbers, directed in a few instances that one pile should be driven on top of another, specified the number to be used, and indicated the depth to which they should be forced. The plaintiff was employed by Davidson, who directed where and how he should work, and had the right to discharge him, though he and the other employees engaged in driving piling were paid by the corporation's checks, which orders on the bank were charged on account of the contract price against Davidson, who was without funds to pay his laborers. The steam engine furnished by Davidson as a motive power to operate the pile-driver was old and defective, the appliances for raising and holding the hammer were inadequate, and no provision was made for an efficient or prompt system of communication by means of signals between the man who operated the engine and the employees about the pile-driver. The engine was Davidson's property, and the corporation did not exercise any supervision, direction or control over the machinery, the men employed by Davidson, the signals, the apparatus, or appliances used in performing such work, and as between the corporation and Davidson he was an independent contractor. The plaintiff, on March 30, 1911, was engaged as 'top man' on the pile-driver, and while he was endeavoring to place a piling between the upright leads, the hammer without his signal and in the absence of any warning, fell, crushing his left hand and causing the injury complained of.''

After stating that by the principles of the common law the defense of independent contractor was available, and, following the recital of the material provisions of the employers' liability act, the learned justice holds that the initiative act does not abrogate such

a defense, and that a defendant possessing such an exit from liability may exercise the immunity as readily under the statute as at common law. The decision of this case was based upon the proposition that the corporation was not the employer of plaintiff, that it had no power to discharge him, and that it exercised no supervision or control over the work.

Subsequently, this court, in the case of *Ackles* v. *Pacific Bridge Co.,* 66 Or. 110 (133 Pac. 781), in an opinion by Chief Justice McBride, points to an exception to the rule to which advertence was made. Thus: "Where a statute or city ordinance requires certain precautions to be taken for the safety of the public in the manner of doing the work, a contractor cannot shift his liability for failure to take these precautions by employing a subcontractor." The facts giving rise to that rule were these: The Pacific Bridge Company contracted with the city of Portland for the improvement of a portion of Alberta Street; that at the time of the execution of the contract an ordinance obtained requiring that all contractors, having work with regard to the streets, should erect and keep erected a barrier along the line of the work to guard the public from injury. The defendant, Pacific Bridge Company, contracted with Jeffery & Buffton to perform the contract. During the progress of the work, a hole in the street was left unguarded, into which plaintiff fell and sustained injuries. The trial court instructed the jury that the defense offered by the Pacific Bridge Company that it was not liable, because having let the contract to a secondary party, could not be maintained. Above all, the agreement with the city provided that the contract should be performed under the personal supervision of the primal contractor, who should have no escape from liability to the city, and that the subcontractor should be construed as merely an employee of the contractor. With this situation in mind, the

sequence is that the Pacific Bridge Company, by the terms of its compact with the city, stood as sponsor for and guarantor of a religious performance of the contract, and could not thereby screen itself from any liability which attached by reason of the neglect of its subcontractor to observe the requirements of the ordinance enacted by the city to preserve inviolate the safety of its citizens. Plain to be seen, the ordinance in question enjoined the original contractor to observe certain cautionary measures apparently of a personal duty and unassignable in character.

To take up the case in hand, the employers' liability act particularizes the class, such as owners, contractors, subcontractors, corporations or persons whatsoever *engaged* in certain activities shall see that the materials employed and the appliances used are carefully selected, inspected and tested, so as to detect any defects. The evident intent of the statute was to hold responsible, for personal injuries to an employee, only that member of the class enumerated who was *engaged* in the undertaking or enterprise embraced in the statute whereby the injury occurred. To conceive otherwise would be going wide of the rule established by this court in the case of *Lawton* v. *Morgan, Fliedner & Boyce,* 66 Or. 292 (131 Pac. 314, 134 Pac. 1037). The initiative act does fix a high standard of care, a violation of which is negligence *per se,* but lays that care to the door of the person having the work in charge, and in consequence thereof the application of the enactment must be circumscribed to that particular source from which or from whom authority and control of the instrumentalities and individuals emanate.

For these reasons the judgment of the lower court will be reversed.                            Reversed.

Mr. Chief Justice McBride, Mr. Justice Eakin and Mr. Justice Bean concur.