Argued February 2, affirmed February 15, 1916.

## DICKERSON v. EASTERN & WESTERN LUMBER CO.*

(155 Pac. 175.)

**Master and Servant—Duty of Master to Provide Safe Place for Servant to Work.**

1. Laws of 1911, page 16, section 1, known as the Employers' Liability Act, provides that all persons engaged in operating machinery

---

*The constitutionality, application and effect of the Federal Employers' Liability Act is discussed in notes in 47 L. R. A. (N. S.) 38; L. R. A. 1915C, 47.

On Workmen's Compensation Acts generally, see extensive note in L. R. A. 1916A, 23.                                    REPORTER.

shall see that all shall be carefully inspected and tested so as to detect any defects, and all scaffolding, staging or other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure, and generally all persons having charge of any work involving danger to any employee shall use every precaution that is practicable to use for the protection of life and limb. Section 3 provides that any failure to comply with the requirements of this act, the person delinquent shall upon conviction be fined or imprisoned, or both, and then states that this shall not affect or lessen the civil liability of such persons as the case may be. *Held* that the latter section continues in force the old rule that it is a nondelegable duty of the employer to furnish a reasonably safe place in which the servant is to work, and the requirements of the act are not satisfied with less than continual vigilance according to the standard of the enactment.

### Master and Servant—Statutory Provisions as to Liability for Injuries.

2. The Employers' Liability Act is remedial in its character, and should be liberally construed, and the conclusion is that the act imposes a duty on the employer of not only inaugurating and providing a safe plant and appliances, but also the maintenance of the same thereafter.

### Master and Servant—Action for Injuries—Sufficiency of Complaint.

3. Where in an action for injuries to an employee in a sawmill, whose duties required him to oil the machinery in the different parts of the mill, the complaint alleged that while plaintiff was so engaged, it became necessary for him to ascend to and cross over and upon a staging erected and maintained by defendant about nine feet above the first floor and near the second floor of said mill, erected for the purpose, among other things, of enabling plaintiff to perform his duties; that while plaintiff was exercising due care and caution the boards in said staging broke, wholly through the negligence of defendant or its servants and employees, in this, that said boards were old, worn, defective and not of sufficient strength to bear the weight of plaintiff and were unsuitable for the purposes used; that defendant was negligent in maintaining such staging, and was further negligent in failing to maintain a staging of sufficient strength to make the same reasonably safe and suitable where plaintiff was to and did perform his duties, and was further negligent in failing and neglecting to exercise every care and precaution practicable in safeguarding the life and limb of plaintiff. *Held* that the complaint stated facts to which the rule of law embodied in the Employers' Liability Act was applicable, and it is not necessary to allege that the action was brought under that particular act to justify its application.

[As to duty of master to furnish safe appliances and places, see note in 33 **Am. St. Rep.** 766.]

### Appeal and Error—Master and Servant—Instructions in Action for Injuries.

4. In an action by an employee for injuries where the complaint alleged sufficient facts to bring the action within the Employers' Liability Act, there was no need for the court to charge the jury in so many words that the Employers' Liability Act was applicable; however, there was no harm done in being thus explicit.

**Master and Servant—Sufficiency of Evidence in an Action for Injuries.**

5. In an action for injuries to an oiler in a sawmill, in which there were two lines of overhead shafting runnings substantially parallel with each other, with runways beneath them upon which the oiler was required to pass in the discharge of his duties, evidence as to the purpose for which boards were placed from one runway to the other and as to plaintiff's use thereof during the three years of his employment, *held* sufficient to authorize the jury to find that they constituted an invitation to plaintiff to use them.

**Master and Servant—Instructions to Jury in Action for Injuries.**

6. Plaintiff was injured by a board in a staging he used. The court charged that, if the defendant furnished plaintiff a scaffolding which met the requirements of the law, then the verdict should be for defendant; that, if it furnished this place for him, but he, without its knowledge, selected instead a temporary scaffolding when the other permanent scaffolding was furnished as the one which he was to use, then he could not recover, but that, if this temporary staging was used by him with the knowledge of defendant, and defendant knew that its oilers were using it habitually, then it was its duty to put it in the condition which the law required it to be in, so as to bear four times the maximum weight to be sustained by it; that, if it failed to perform this duty enjoined upon it by statute, it was negligent. *Held* that this charge fairly met all the conditions of the case respecting the question whether the scaffolding was furnished by the employer or not.

**Negligence—Instructions as to Carelessness Contributing to Injury.**

7. In an employee's action for injuries under the Employers' Liability Act, the refusal of an instruction that it was the duty of an employee, when doing such work as plaintiff was doing at the time he was injured, to exercise reasonable care and caution to avoid danger and injury to himself and to use reasonable care and caution on looking and observing where he walked or moved, was not error; the court having charged in. accordance with the statute that one was not barred from recovering compensation because guilty of carelessness contributing to his own injury, but that the fault of each party was to be considered and the damage apportionately adjusted.

**Appeal and Error—Review—Questions of Fact Settled by Verdict.**

8. Where, in an employee's action for injuries, issue was joined on the questions of negligence and of the installation and retention of a faulty appliance, and there was testimony on each side of the question, and the theory of each party was presented to the jury by appropriate instructions, the verdict settled the facts.

From Multnomah: HENRY E. McGINN, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

John Dickerson commenced an action against the Eastern & Western Lumber Company, a corporation, to recover damages for an injury.

The plaintiff alleges and the defendant admits that at all times mentioned in the pleadings the latter owned and operated a sawmill in the City of Portland, together with all the equipment, fixtures and machinery used in connection therewith, and that the plaintiff was employed by it to oil the different parts of the mill and its machinery. The gravamen of the charge is contained in the following allegations of the complaint:

"That on or about March 22, 1913, while the plaintiff was engaged in said employment, it became and was necessary for the plaintiff to ascend to and cross over and upon a staging or false work which had been erected and maintained by the said defendant about nine feet above the first floor and near the second floor of said mill, for the purpose, among other things, of enabling the plaintiff to perform his duties; that in crossing over said staging for the purposes aforesaid, and while the plaintiff was exercising due care and caution for his own safety, one or more of the boards in said staging broke, causing the said plaintiff to be precipitated to the floor of said mill, inflicting upon the plaintiff serious and permanent injuries as more specifically hereinafter stated; that the injuries to said plaintiff were caused wholly and solely by the negligence of the defendant, its servants and employees, in this, that said staging, and particularly the boards thereof which broke as aforesaid, were old, worn and defective, and were insufficient to bear the weight of the plaintiff, and were insufficient and unsuitable for the purposes intended, and the defendant was therefore negligent in erecting and maintaining said staging as aforesaid; that the defendant was further negligent in failing, neglecting and refusing to erect and maintain a good and sufficient staging upon which plaintiff could perform his said duties, and to make and maintain the place in which and about which the plaintiff was to and did perform his duties, reasonably safe and suitable; that the defendant was further negligent in failing to properly test and inspect said staging in order to ascertain any defects that might appear

therein; that the defendant was further negligent in failing and neglecting to exercise every care and precaution practicable in safeguarding the life and limb of the plaintiff and other employees of said mill.''

The remainder of that pleading refers to the nature of the plaintiff's injuries and the amount of damage he claims.

Except as stated, all the plaintiff's averments are denied by the answer. The defendant asserts its ownership and operation of a large sawmill, that it employed the plaintiff as an oiler in and about the mill, and that it was his duty to oil bearings on the overhead shafting about 12 or 15 feet above the floor while the machinery was in operation, and that these bearings were reached only by means of a step-ladder which the defendant had furnished. It states that it never maintained at any time any staging or false work to enable the plaintiff to perform his duties, and that the only thing it did provide and maintain and instruct the plaintiff to use was a good, substantial, safe and convenient step-ladder which he could have conveniently and with safety to himself moved from place to place while oiling the machinery. It avers that without its consent or knowledge the plaintiff, when oiling the overhead bearings, habitually passed from point to point upon a board which rested upon girders or timbers where it had been placed either by the plaintiff or someone of his fellow-servants, and that on the occasion in question it broke under him, precipitating him to the floor, whereby he was injured, as stated in his complaint, all without any want of care on the part of defendant. In brief, the answer concludes with a plea of assumption of risk and contributory negligence.

The affirmative matter stated by the defendant was traversed by the reply. No exception was taken to any

testimony offered at the trial.    The question presented
for review relates solely to the construction of the
complaint and the instructions of the court to the jury.
·The trial resulted in a verdict and judgment in favor.
of the plaintiff, from which the defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of
*Messrs. Crawford & Eakin,* with an oral argument by
*Mr. Thomas H. Crawford.*

For respondent there was a brief over the name of
*Messrs. Seitz & Clark,* with an oral argument by *Mr.
Maurice W. Seitz.*

MR. JUSTICE BURNETT delivered the opinion of the
court.

1. The principal contention of the defendant is that
the court erred in applying to the issues in the case the
initiative act adopted at the general election in 1910,
commonly known as the employers' liability law, em-
bodied in Chapter 3 of the General Laws of Oregon for
1911.    As stated, the defendant admits that it was run-
ning machinery, and that the plaintiff was at the time
employed by it in a capacity connected with its opera-
tion.    The statute in question was peculiarly designed
for "extending and defining the liabilities of employers
in any or all acts of negligence or for injury to their
employees."    Its authority is exercised over "all
owners * * or persons whatsoever, engaged * * in
the erection or operation of any machinery."    It
states that:

Such persons "shall see * * that all * * wood
* * or other material whatever, shall be carefully se-
lected and inspected and tested so as to detect any
defects, and all scaffolding, staging, ·false work or

other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure; * * and generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliances and devices'': Section 1.

Section 3 visits a criminal penalty upon such persons, and states that:

''This shall not affect or lessen the civil liability of such persons as the case may be.''

The latter section plainly continues in force the old rule that it is a nondelegable duty of the employer to furnish a reasonably safe place in which the servant is to work. The requirements of the act are simply expressions in detail of the duty thus enjoined, and are not satisfied with less than continual vigilance according to the standard of the enactment.

The complaint counts on the defendant's negligence, not only in the original construction, but also in the subsequent maintenance of a defective instrumentality. In various forms the defendant urges that the liability act is not applicable under the pleadings, and that before it can be used as the standard by which the issue is to be determined the plaintiff must have declared upon the very language of the statute and brought himself within its letter. For instance, it criticises the averments of the complaint quoted above, and maintains that the plaintiff should have stated in so many words that the scaffolding was not constructed to bear four times the maximum weight to be sustained by such

structure. The plaintiff states, in substance, that in the discharge of his duties he was necessarily required to cross over the staging, and that in doing so one of the boards composing it broke, precipitating him to the floor. It would seem that, if the material was not strong enough to bear the weight of one man, it would assuredly be too weak to sustain four times his weight. Again, the defendant complains that, when plaintiff says the defendant was negligent "in failing to properly test and inspect said staging in order to ascertain any defects that might appear therein," he states a mere conclusion of law, and that it should be left to the court to say whether the inspection was proper. The averment, however, does not stop with saying that the defendant failed to properly test and inspect the staging. It goes further, and shows the extent to which the examination ought to have been carried, namely, to ascertain any defects that might appear therein.

2–4. It is also claimed that the defendant's whole duty was performed when at the outset it furnished a suitable appliance, and that afterward its liability must depend upon some other rule than that announced in the statute; but we do not so apply the enactment. It is remedial in its character, and in that light should be liberally construed. The general object is for the protection of employees. In such cases the duty of the defendant is continuing, and controls, not only the inauguration of a safe plant and appliance, but also the maintenance of the same thereafter. This conclusion is plainly deducible from the general duty imposed upon the persons within the contemplation of the act to use every device, care and precaution for the protection of its employees. This disposes of the contention of the defendant that the plaintiff was permitted to allege faulty construction and prove defective main-

tenance. It is in bad form to set out a conclusion of law or to say that this or that statute is the one under which the action is brought. It is enough to declare the facts upon which the plaintiff relies, and the court will for itself determine what legal rule governs the construction of the averments. For instance, in a declaration upon a promissory note it would not be requisite to state that the action was brought under the negotiable instruments law nor to say that it was an action upon an express contract. Again, where the plaintiff should allege that defendant had beaten and wounded him, to his bodily injury, it would not be essential to inform the court that the grievance is founded on a tort. In this case the plaintiff has stated a series of facts to which the rule of law embodied in the legislation in question is fairly applicable. There was no need for the court to state the source from which he derived his legal conclusion or to say in so many words that the employers' liability law was applicable; but no harm was done by being thus explicit.

5. The testimony shows that in the mill in question there were at least two lines of overhead shafting running substantially parallel with each other, too high from the floor to be reached by the oiler without the aid of some appliance. The evidence on the part of the defendant shows that under each of these main lines of shafting it had provided a permanent staging or "runway," as some witnesses called it, composed of 2-inch planks securely fastened to the timbers of the mill, upon which the oiler was required to pass and repass in the discharge of his duties. They were so high from the floor that the plaintiff was compelled to climb upon them by aid of a step-ladder or otherwise. It is in evidence that at the point where the plaintiff received his injury there were two boards 1x8 inches in

dimensions laid side by side from one of these permanent platforms to the other. A witness who had formerly been a millwright in the employ of the defendant "to look over the machinery and see that everything was going pretty good," as he phrases it, testified that he put up those boards "for the millwright to go and fix the machinery and so that the oiler could go around there to oil." The plaintiff stated on oath that during the course of his employment for three years prior to the accident the boards were there, and were regularly used by him for the purpose of going from one line of runway to the other. The defendant contends that all this was without its knowledge, and that it was his duty to climb down from one side on the ladder and move it over to the other and again ascend. We remember that it pleads that the ladder was the only appliance which it furnished, and instructed the plaintiff to use in the discharge of his duties. There is testimony to the effect that the ladder was used indiscriminately by all the employees, and that sometimes it was available for use by the plaintiff, and sometimes not. The superintendent testified thus:

"You never gave John [meaning plaintiff] any instructions with reference to this oiling?

"A. Very seldom—once or twice.

"Q. Well, did you with reference to how to do his duty?

"A. No."

The narrations of the witnesses are silent as to whether any instructions were given to the plaintiff about what to use. There is testimony tending to show that these boards were there in that position when the employment of the plaintiff as an oiler began, and we think it is a fair deduction of fact which the jury was authorized to make from the circumstances that they

constituted an invitation to the plaintiff to use them in going about to oil the overhead bearings. Indeed, he testifies that there was one shafting that could not be reached except from the staging that broke under him. Another witness states that the boards were culls indicating defective material.

6. After quoting the provisions of the act, the court instructed the jury in the following language:

"If the defendant in this case furnished the plaintiff in this case a scaffolding to do his work which met the requirements of this law, as I have just read it to you, then in that respect it performed its duty toward him, and there is no negligence in the case, and your verdict must be for the defendant. If it furnished this place for him, but the plaintiff, without the knowledge of the defendant, selected instead this temporary scaffolding for his own purpose, when this other permanent scaffolding was furnished by the defendant as the one which the plaintiff was to use in performing his duties as an oiler, and as I have just said, this other temporary staging was used without the knowledge of those in charge of the work of the defendant, then the plaintiff cannot recover in this case; but, if this temporary staging was used by the oiler with the knowledge of the defendant company, and it was done habitually to such an extent that the defendant company knew that their oilers were using it habitually and permitted them to use it, then it was the company's duty to put it in the condition which this law passed for the safety of employees required it to be in—that it should be so constructed as to bear four times the maximum weight to be sustained by it. If the defendant company failed to perform this duty which is by the statute enjoined upon it to perform, it was negligent without any other question in the case. This law was passed for the protection of employees and the public, and its requirements must be met, and failure to do what the statute says must be done constitute negligence in and of itself."

. . .

This left to the jury the disputed question of fact of whether the defendant had provided a defective scaffolding for the use of the plaintiff, or had not done so, or whether, on the other hand, it had furnished only a ladder which was safe and suitable for the work. It fairly informed the jury that, if the defendant supplied the plaintiff with a safe and suitable instrumentality for the performance of the work, and he refused to do it, but adopted an unsafe method of his own accord without its knowledge, it was exonerated. On the other hand, it presented to the jury the alternative that, if the defendant furnished a defective scaffolding, or if the same was thus employed so long and constantly that it must be presumed the defendant knew it was being so used and permitted it, then the duty of the defendant to keep it in suitable repair attached to the transaction. The charge fairly met all the conditions of the case in that respect.

7. The quoted excerpt includes most of the instructions requested by the defendant. It asked in addition thereto the following direction to the jury:

"No. 6. It is the duty of an employee, when doing such work as the plaintiff was at the time he was injured, to exercise reasonable care and caution to avoid danger and injury to himself, and to use reasonable care and caution in looking and observing where he walks or moves, and to exercise reasonable care and caution to avoid dangers and injuries to himself."

The enactment under consideration does not directly impose any such duty upon the employee. So far as liability is concerned, it rests primarily upon the negligence of the defendant contributing to the accident. Under the statute the heedlessness of the plaintiff is an ingredient only for the purpose of mitigating damages. The true rule was stated by the court, in

substance, that one is not barred from recovering compensation because he has been guilty of carelessness contributing to his own injury, and that in the final calculation the fault of each party is considered, and the damage apportionately adjusted.

8. In brief, the pleadings show the relation of employer and employee in the operation of machinery and the neglect of the defendant both in construction and maintenance of a defective scaffold which it provided for the use of the plaintiff and which broke under him to his hurt. Issue was joined on the questions of negligence and of the installation and retention of the faulty appliance. There was testimony on each side of the question. The court fairly presented the theory of each party to the jury by appropriate instruction, and the verdict settles the facts.

We find no error in the record.

. The judgment is affirmed.                      'Affirmed.

Mr. Chief Justice Moore, Mr. Justice McBride and Mr. Justice Benson concur.