Argued and submitted February 26, 2020, reversed and remanded July 14, 2021

Arthur YEATTS
and Nancy Doty, Inc.,
Special Fiduciary for Arthur Yeatts,
*Plaintiffs-Appellants,*

*v.*

POLYGON NORTHWEST COMPANY,
a foreign corporation,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV08020124; A167120

496 P3d 1060

Following a jury trial, plaintiff appeals from a judgment dismissing an action in which he alleged liability against defendant for personal injuries under the Employment Liability Law (ELL), ORS 654.305 to 654.336. Plaintiff assigns error to the trial court's refusal to instruct the jury that an employer's duty under the ELL is nondelegable, UCJI 55.15. Defendant interposes six cross-assignments of error. *Held*: The trial court erred by refusing to give the jury instruction, UCJI 55.15, because the instruction was a correct statement of law, was supported by the pleadings and evidence, was not unduly cumulative, and would have avoided confusion. That error prejudiced plaintiff and required reversal. The Court of Appeals rejected defendant's six cross-assignments of error.

Reversed and remanded.

Jeffrey S. Jones, Judge.

J. Randolph Pickett argued the cause for appellants. Also on the briefs were R. Brendan Dummigan, Kimberly O. Weingart, Pickett Dummigan McCall LLP, Jeffery A. Bowersox, Bowersox Law Firm PC, Scott M. Supperstein, and Law Offices of Scott M. Supperstein, P. C.

Stephen P. Rickles argued the cause for respondent. Also on the brief were Martin W. Jaqua, Bruce H. Cahn, Lane Powell, PC, Robert Spajic, and Bullivant Houser Bailey, PC.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded.

DeVORE, P. J.

Following a jury trial, plaintiff appeals from a judgment dismissing an action in which he alleged liability against defendant for personal injuries under the Employer Liability Law (ELL), ORS 654.305 to 654.336.[1] Plaintiff assigns error to the trial court's refusal to instruct the jury that an employer's duty under the ELL is nondelegable.[2] With that point, we agree.[3] Defendant interposes six cross-assignments of error. We explore why plaintiff's instruction was appropriate, and we recap the cross-assignments, rejecting them. In the end, we reverse and remand for further proceedings.

FACTS

We review a trial court's failure to give a requested jury instruction for errors of law, and we evaluate the evidence in the light most favorable to the establishment of the facts necessary to require the instruction. *Ossanna v. Nike, Inc.*, 365 Or 196, 199, 445 P3d 281 (2019). Accordingly, we recite the facts in the light most favorable to the giving of plaintiff's "nondelegable duty" instruction. *See id.*

In 2006, defendant, Polygon Northwest Company (Polygon), was the general contractor for a residential townhome development. Polygon signed a contract with plaintiff's employer, Wood Mechanix, LLC (Wood Mechanix), to finish the framing work of the townhomes.

---

[1] We refer to the injured plaintiff and his fiduciary, also a plaintiff, in the singular.

[2] Uniform Civil Jury Instruction (UCJI) 55.15 states, "A defendant that is an employer under the Employer Liability Law cannot avoid the duties imposed by the Employer Liability Law by delegating those duties to any other person or company."

[3] Plaintiff also assigns error to the trial court's refusal to instruct the jury in accordance with UCJI 55.09 (concerning inspection). At trial, plaintiff did not explain his reasoning for requesting the instruction and did not respond when the trial court stated that it would not give the instruction. Without more, plaintiff's request for UCJI 55.09 alone did not preserve the arguments he now makes on appeal. Therefore, we do not consider his second assignment of error. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (the party must have provided "the trial court with an explanation of his or her objection"); *see also State v. Vanornum*, 354 Or 614, 632, 317 P3d 889 (2013) (summarizing preservation concerns).

Their contract consisted of three major sections. Relevant to our analysis, the first section, concerning the specific "Scope of Work," included a provision specifying that "[Wood Mechanix] is required to promptly and diligently provide temporary railings, braces and fall protection as may be required by the ongoing framing of the buildings [p]er OSHA requirements." The third section, titled "General Terms and Conditions," contained a section specifically addressing the safety requirements for the project. That section provided, in part:

"4.3 Safety Requirements.

"[Polygon] is committed to maintaining a safe work place. [Wood Mechanix] agrees to take necessary safety and other precautions, at all times, to prepare for and perform the work in a safe manner and to protect persons from illness or injury and property from damage arising out of the performance of the work. * * *

"[Wood Mechanix] shall take all necessary safety precautions pertaining to its work and the conduct thereof, including but not limited to, compliance with all applicable laws, ordinances, rules[,] regulations and orders issued by a public authority, whether federal, state, local or other, the federal Occupational Safety and Health Act, the Oregon Safe Employment Act, *and any safety measures requested by* [*Polygon*]. [Wood Mechanix] shall, at all times, be responsible for providing a safe work site and be responsible for the safety of all personnel, equipment, and materials within [Wood Mechanix's] care, custody, or control. [Wood Mechanix] shall promptly provide [Polygon] with written notice of any safety hazard or violation found anywhere on or adjacent to the construction site. * * *

"[Wood Mechanix] shall develop a site specific safety plan * * * that identifies all anticipated hazards that will most likely be encountered in all phases of the project and which identifies the specific means that will be used to address those hazards. The Safety Plan shall be submitted to [Polygon] prior to [Wood Mechanix] commencing work on the Project site or at any off-site location under the exclusive control of [Wood Mechanix]. * * *

"[Wood Mechanix] shall submit to [Polygon], on a monthly basis, copies of all documentation maintained by [Wood Mechanix] pertaining to safety, weekly safety meeting

minutes, implementation of its Safety Plan, as well as all documentation relating to [Wood Mechanix's] compliance with any other job site safety plans applicable to its work."

(Emphasis added.)

Polygon also kept a copy of its own site-specific Accident Prevention Plan at the construction site, although it was not part of the contract. That plan provided that all of Polygon's "superintendents will know and enforce Tanasbourne Place Townhomes LLC's safety standards for construction." The plan instructed the site superintendents to "inspect their construction sites daily for safety hazards and issue 'Safety Hazard Observed' notices to any subcontractor in violation." Polygon's plan provided that the fall protection device for working on higher floors was "guardrails." Polygon's plan indicated that the plans of Polygon's subcontractors would describe the assembly of such guardrails, stating:

> "The proper procedure for assembly of fall arrest/restraint equipment will be found in the related * * * Subcontractor's Fall Protection Work Plan and according to manufacturer's recommended procedures."

At the preconstruction orientation meeting between Polygon's site superintendent and each subcontractor, Polygon provided a checklist that required a subcontractor's own fall protection plan to "identify all fall hazards"; "describe the method of fall arrest or fall restraint to be used for these hazards"; "describe the correct procedures for assembl[y], maintenance, inspection and disassembly of the fall protection system"; and required that the "[s]ubcontractor's fall protection equipment should be inspected routinely by a competent and qualified person."

Plaintiff was working for Wood Mechanix as a framer on the townhome project in 2006 when he fell from a third story platform and sustained serious injuries. According to plaintiff, he was working alone to frame an exterior third floor wall in preparation to raise and lift it into position. As he was kneeling to get up, he placed his left forearm on the middle rail of the guardrail system to push himself into a standing position. As he placed his weight

on the post, the guardrail gave way and plaintiff fell to the concrete floor below.

Plaintiff brought this action against Polygon, alleging in two claims that Polygon was liable under common law negligence and the ELL. Plaintiff alleged that, although it was not defendant's direct employer, Polygon was liable under the ELL because Polygon "retained the right to control the manner and method in which construction operations were performed" by Wood Mechanix.

Polygon moved for summary judgment on both claims, arguing that it was not subject to the ELL because it had delegated the "means, methods, and maintenance of all fall protection" to Wood Mechanix and that the guardrails at issue were under the sole control of Wood Mechanix. The trial court granted Polygon's motion for summary judgment on both grounds, and plaintiff appealed.

The Supreme Court affirmed the trial court's dismissal of plaintiff's common law negligence claim but reversed dismissal of plaintiff's claim based on its ELL theory of liability. *Yeatts v. Polygon Northwest Co.*, 360 Or 170, 197-98, 379 P3d 445 (2016) (*Yeatts I*). The court focused on the text in the "General Terms and Conditions" of the contract requiring Wood Mechanix to abide by "any safety measures requested by [Polygon]" and allowing Polygon to "inspect the work site in its entirety, particularly in the absence of a contractual provision that placed sole responsibility for safety measures on Wood Mechanix." *Id.* at 192. Based on those contract provisions, the court held that there was "sufficient evidence that Polygon retained the right to control the risk-producing activity so as to preclude summary judgment in favor of Polygon with respect to that specification of plaintiff's ELL claim." *Id.*

On remand, plaintiff reasserted his ELL claim against Polygon, based on a retained right of control theory under ORS 654.305, which provides:

"Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and

limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Plaintiff alleged in the ELL claim that defendant was negligent:

"a.   In failing to require and utilize a guard rail [*sic*] system that was effective in preventing falls;

"b.   In failing to have a guardrail system that was effectively anchored on both ends;

"c.   In failing to have a guardrail system that could withstand 200 pounds of pressure;

"d.   In failing to warn plaintiff that he was working in an area where the guardrail system was inadequate;

"e.   In failing to inspect the place where plaintiff was required to work at a height;

"f.   In failing to see that guardrails were maintained in a safe condition; [and]

"g.   In failing to use every device, care and precaution that was practicable to use for the protection and safety of life and limb, in violation of Oregon's Employer Liability Law pursuant to ORS 654.305."

Plaintiff argued that Polygon had contractually retained a right to control the building and inspection of the guardrails based on the same contract provisions on which the Supreme Court relied above.

Polygon responded in two ways. First, Polygon argued that it was not subject to the ELL because it did not retain any control over the guardrails such that any failure related to the guardrails was the sole fault of the framing subcontractor, Wood Mechanix. Notwithstanding contract language stating that Wood Mechanix was required to comply with "any safety measures requested by [Polygon]," Polygon argued that the contract as a whole and the parties' intent revealed that the quoted language only meant that Polygon retained a right to assure OSHA compliance and that both parties believed Wood Mechanix was solely responsible for fall prevention safety as related to its own

employees. Second, Polygon argued that, if the jury found that Polygon retained a right of control so as to be subject to the ELL, plaintiff's fault outweighed Polygon's comparative fault. Specifically, Polygon argued that plaintiff should have known not to lean on the guardrail and should have worn fall-protection gear.

Prior to trial, the trial court examined the text and context of the contract to determine whether it could resolve, as a matter of law, whether the contract unambiguously gave Polygon a retained right of control over the manner and method of guardrail installation and maintenance, thereby subjecting Polygon to the ELL. The trial court concluded that the text and context of the contract did not resolve the ambiguity. The trial court held a hearing to review whether extrinsic evidence regarding the formation of the contract could resolve the ambiguity. The trial court determined that the ambiguity remained. The trial court concluded that the question whether Polygon retained a right of control was a question of fact for the jury to resolve.

The case proceeded to trial on a bifurcated basis. The first stage presented two questions for the jury to resolve: (1) whether Polygon retained a right of control and was thus subject to the ELL and, if yes, (2) whether Polygon violated the ELL in a manner that caused plaintiff's injury. The issue of damages was reserved for a later, second stage. At trial, the parties relied on competing inferences from the same witnesses as to whether the parties intended Polygon to retain control over the manner and method in which Wood Mechanix installed and maintained its safety guardrails.

Plaintiff, through testimony from Polygon and Wood Mechanix employees, argued that the language requiring Wood Mechanix to comply with "any safety measures requested by [Polygon]" made it apparent that, if Polygon had requested an additional safety provision, Wood Mechanix would have been contractually required to follow the additional safety procedures.

Plaintiff presented expert testimony from Hislop, an engineering safety professional, who testified that Polygon did not comply with industry standards and practices with respect to creating a safe work environment for working

at heights. Hislop testified that Polygon's superintendents should have walked around and conducted regular and frequent inspections. He opined that a competent superintendent would have seen that Wood Mechanix had assembled guardrails in the wrong way even from the ground. Plaintiff also used photographs of the broken guardrails at the scene of the accident to argue that a Polygon superintendent could have seen, when conducting an inspection from the ground, that the guardrail was not properly anchored.

Polygon, through testimony from the same witnesses, argued that, despite the way that the key language was phrased, both parties intended, as a practical matter, for Wood Mechanix to have sole responsibility for the safety of its own employees, including sole control over construction of the guardrails. The owner of Wood Mechanix testified that he would not have agreed to a provision that allowed the general contractor, Polygon, to dictate how to carry out safety provisions. The former president of Polygon testified that it was not the general practice of Polygon to tell subcontractors how to conduct their safety practices. Polygon employees testified that, practically, the "any safety measures" provision at issue was meant to allow Polygon's superintendents to point out a safety hazard, such as a subcontractor not wearing a hard hat, and obligate the subcontractor to correct that condition. A project manager for Polygon, however, testified that a superintendent would not tell a specialized tradesperson, such as a framer, how to do something specific to their trade.

A Wood Mechanix superintendent, Downs, testified that he had inspected the guardrails the night before the accident and that all guardrails seemed to be in place. Downs also testified that employees were instructed that guardrails were there to serve only as physical barriers and not for physical support. Polygon argued that the instability of the guardrail was not visible from the ground and that it would not be practicable under the ELL for a contractor to walk up every platform and physically test each guardrail.

Prior to submitting the case to the jury, plaintiff requested Uniform Civil Jury Instruction (UCJI) 55.15, which as noted above, instructs:

"A defendant that is an employer under the Employer Liability Law cannot avoid the duties imposed by the Employer Liability Law by delegating those duties to any other person or company."

Plaintiff contended that the instruction should have been given as a second step in the jury's inquiry if the jury first concluded that Polygon retained control and was thus an employer subject to the ELL.[4] Polygon objected to the instruction, arguing that it did not believe the ELL prevented indirect employers from delegating duties as a matter of law.

The trial court agreed with plaintiff that the jury instruction was a correct statement of the law but declined to give the instruction. The trial court explained that it was concerned that the instruction could be confusing to the jury in light of Polygon's main defense that it was not subject to the ELL because it had permissibly delegated all control over the guardrails to Wood Mechanix. The trial court, however, did allow plaintiff the opportunity to argue to the jury that an employer's duty under the ELL is nondelegable.

The jury returned a verdict for defendant. Responding to seven questions on the verdict form, the jury found that (1) plaintiff's fall was not caused by the sole and exclusive fault of Wood Mechanix; (2) Polygon did retain a right to control the method or manner in which the risk-producing activity was performed; (3) Polygon violated the ELL in one or more of the ways alleged in the complaint; (4) the violation of the ELL was a cause of plaintiff's fall; (5) plaintiff was also negligent in one or more of the ways Polygon alleged; (6) plaintiff's negligence contributed to plaintiff's fall; and (7) Polygon was 49 percent at fault and plaintiff was 51 percent at fault.

## JURY INSTRUCTION

On appeal, plaintiff argues that the trial court erred when it declined to give his jury instruction stating that an employer subject to the ELL cannot delegate its duties.

---

[4] We reject Polygon's challenge to plaintiff's preservation of the argument that the trial court erred in rejecting UCJI 55.15. Plaintiff, during the parties' discussion of jury instructions with the trial court, sufficiently developed his argument, renewed on appeal, regarding how UCJI 55.15 applied to his theory of the case and should have been incorporated into the verdict form.

Among Polygon's responses, it asserts primarily that UCJI 55.15 is an incorrect statement of the law, was inapplicable to the pleadings and evidence, and would have been cumulative given the trial court's general description of Polygon's duty as an employer in other instructions.

We review a trial court's refusal to give a requested jury instruction for errors of law. *Ossanna*, 365 Or at 199. Generally, the parties in a civil action are entitled to a jury instruction on their theory of the case if the requested instruction correctly states the law, is based on the operative pleadings, and is supported by the evidence. *Id.* at 212-13 (citing *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 105-06, 957 P2d 147 (1998)). A trial court does not err, however, if the substance of the requested instruction, even if correct, was covered fully by other jury instructions given by the trial court. *Id.* at 213.

In this case, to determine whether the trial court erred in refusing to give UCJI 55.15, we must first consider whether instructing a jury that an employer's duties under the ELL are nondelegable is a correct statement of the law. Polygon asserts that such a standard is an incorrect statement of the law because the Supreme Court has not applied such a standard to indirect employers, the language is not "found within the text of the ELL itself," and the instruction is incompatible with the common law independent-contractor defense.

As for Polygon's initial points, the Supreme Court has addressed an employer's duty under the ELL, including ORS 654.305. As noted, that provision of the ELL provides:

> "Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

ORS 654.305. Following the enactment of the ELL, the court consistently held that, if an employer was subject

to the ELL, its duties under the ELL were nondelegable. *Camenzind v. Freeland Furniture Co.*, 89 Or 158, 180, 174 P 139 (1918) ("The duty imposed upon the master by the Employers' Liability Act is a nondelegable duty. * * * And therefore, when we once determine the duty imposed upon the master, we find a duty which is absolute, nondelegable and continuing; the employer cannot absolve himself from the performance of it, nor can he delegate it to the employe, but it adheres to him without the possibility of suspension or interruption." (Citations omitted.)); *Moen v. Aitken*, 127 Or 246, 249, 271 P 730 (1928); *Nordin v. Lovegren Lumber Co.*, 80 Or 140, 147, 156 P 587 (1916); *Dickerson v. Eastern & Western L. Co.*, 79 Or 281, 287, 155 P 175 (1916). When the Supreme Court reversed summary judgment in this case, the court referenced the nondelegable nature of duties imposed under the ELL, as described in *Camenzind*. *Yeatts I*, 360 Or at 179 n 2.[5]

No authority relied upon by Polygon undercuts the court's previous affirmations of the nondelegable nature of duties under the ELL. Polygon relies on several cases, including *Howard v. Foster & Kleiser Co.*, 217 Or 516, 332 P2d 621 (1958), and *Galer v. Weyerhaeuser Timber Co. et al*, 218 Or 152, 344 P2d 544 (1959), to support its argument that the nondelegable nature of ELL duties "has actually been rejected in the context of an ELL claim made against a party other than an injured worker's actual employer." (Emphasis omitted.) However, Polygon misreads those cases.

*Howard* and *Galer* both concern the vice-principal rule, which is derived from statute and, as we explain, does not apply to this case. That statute, ORS 654.315, provides:

"The owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to 654.336 are complied with."

---

[5] The court explained, "In *Camenzind v. Freeland Furniture Co.*, 89 Or 158, 180, 174 P 139 (1918), this court stated that '[t]he duty imposed upon the master by the [ELL] is a nondelegable duty.' However, the nondelegable nature of a duty imposed by the ELL does not affect the determination of whether such a duty exists in the first instance." *Yeatts I*, 360 Or at 179 n 2. Whether that duty existed in the first instance was the question to be resolved here at trial.

*See also Miller v. Georgia-Pacific Corp.*, 294 Or 750, 757, 662 P2d 718 (1983) (explaining the vice-principal rule). Under the vice-principal rule, employers subject to the ELL can permissibly delegate the duty to see that the statutory requirements of the ELL, from ORS 654.305 to 654.335, are carried out to a person or employee "who has powers sufficient in extent to make him a person in charge of the particular work." *Howard*, 217 Or at 542 (internal quotation marks omitted). If an employee is charged with such a duty to see that the statutory requirements are carried out by the employer, he cannot then hold his employer responsible if his injuries result from his own failure to have complied with the ELL. *Skeeters v. Skeeters*, 237 Or 204, 220-21, 389 P2d 313 (1964). Stated differently, the vice-principal rule operates to deny a plaintiff relief against his employer for a violation of the ELL where the plaintiff's injuries resulted from his own failure to carry out properly delegated duties. *See, e.g.*, UCJI 55.13 (sample instruction on vice-principal rule).

Unlike *Howard* and *Galer*, this is not a claim brought by plaintiff against his direct employer, and it is not a claim where the plaintiff qualifies as a vice principal of his direct employer. As we have previously explained, "[T]he [vice-principal] rule does not apply to injuries suffered by an indirect employe from an instrumentality controlled by his indirect employer that the employe has no duty delegated by his indirect or immediate employer to install, maintain or inspect." *Kauffman v. L.D. Mattson, Inc.*, 61 Or App 462, 466, 657 P2d 720, *rev den*, 294 Or 792 (1983).

Polygon also relies on *Tamm v. Sauset*, 67 Or 292, 135 P 868 (1913), to assert that UCJI 55.15 would be an incorrect statement of the law, viewing it as contrary to the independent contractor defense. An "independent contractor" defense, however, would be relevant to the first step of the jury's inquiry—determining whether Polygon retained control over the risk-producing activity—but not after the jury determined that the ELL applied. Thus, *Tamm* is distinguishable. *See Tamm*, 67 Or at 295-97 (concerning whether the employer retained sufficient control). In short, Polygon's references provide no authority for its view.

In this case, instructing the jury that duties under the ELL are nondelegable would be relevant after the jury first determined that Polygon *did* retain control over the safety of the guardrail system.[6] UCJI 55.15 would not erroneously prohibit or contradict a defense that Polygon had completely delegated control over the safety of the guardrails to Wood Mechanix.[7] We conclude that it is a correct statement of the law that, after a determination that an employer retained control, an employer's duties under the ELL are nondelegable.

Based on the same case law, we reject Polygon's contention that the jury instruction was inapplicable based on the pleadings. Polygon reasons that UCJI 55.15 is based on a theory of vicarious liability and should not apply. We disagree. The nondelegable nature of an employer's ELL duties is a matter of direct liability under the ELL.

Polygon also argues that UCJI 55.15 would be cumulative of others given, such that the trial court had the discretion to decline giving the instruction. Polygon argues that, because the trial court included an instruction defining the general duties of an employer under the ELL, as contained in ORS 654.305, further explaining that those duties are nondelegable would have been redundant.

It is correct that the trial court does not err in refusing to give a jury instruction, even if it is a correct statement of the law, if the substance of the instruction was covered fully by other jury instructions given. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998). And, it

---

[6] That is consistent with plaintiff's request for the instruction at trial:

"So maybe we should say, if you conclude that Polygon is an employer under the [ELL] *** then they can't void it by delegating to someone else. The whole premise of the uniform instruction is that the jury has to conclude that the defendant is subject to the ELL."

[7] In fact, the court did instruct the jury on Polygon's "sole fault of another party" defense, which was similarly phrased:

"Defendant next contends that because Wood Mechanix has already agreed to comply with basic OSHA rules, *** the [ELL] and any other applicable governmental safety regulations, those *contractual duties remained the sole responsibility of Wood Mechanix,* regardless of what other measures Tanasbourne or Polygon might request in other parts of the subcontract."

(Emphasis added.)

is true that there are related instructions here. For one, the trial court instructed the jury consistently with the language of ORS 654.305, explaining that, under Oregon law,

"[g]enerally, all owners, contractors, or subcontractors, or other persons having charge of or responsibility for any work involving a risk or danger to the employees or the public, shall use every device, care, and precaution that is practicable to use for the protection and safety of life and limb."

Concerning an employer's duties, the trial court also listed a specific regulatory requirement that plaintiff alleged Polygon had violated, explaining:

"Guardrail systems shall be capable of withstanding, without failure, the force of at least 200 pounds applied within two inches of the top edge in any outward or downward direction at any point along the top edge."

(Internal quotation marks omitted.) To give those instructions, however, was not enough.

None of the instructions describing an employer's duties under the ELL explained that, once an employer is found to retain control over the risk-producing activity, those duties are nondelegable. Charged with such an instruction, the jury would have understood how the general duties under the ELL operate between an employer and third parties. That subject was not encompassed by the given instructions, and UCJI 55.15 would not have been redundant. Because UCJI 55.15 is a correct statement of the law, based on the current pleadings in the case, and not unnecessarily cumulative, the trial court erred in declining plaintiff's request to give the instruction.

We must determine whether that error requires reversal. "An error in failing to give a requested instruction 'is harmless if there is little likelihood that the error affected the verdict.'" *Summerfield v. OLCC*, 366 Or 763, 781, 472 P3d 231 (2020) (quoting *Ossanna*, 365 Or at 219). "Conversely, an error in failing to give an instruction is prejudicial if it 'probably created an erroneous impression of the law in the minds of the jury and if that erroneous impression may have affected the outcome of the case.'" *Id.* (quoting

*Ossanna*, 365 Or at 219). When determining whether an instructional error is harmless, we consider the instructions as a whole and in the context of the evidence at trial and the parties' theories of the case with respect to the claims and defenses at issue. *Id.*

Plaintiff contends that, because the jury was unaware of the nondelegable nature of Polygon's duties under the ELL, especially in light of Polygon's primary defense that it had delegated all responsibility for safety to Wood Mechanix, the jury might have misunderstood the scope of Polygon's wrongdoing when assigning the parties' comparative fault.[8]

As described above, the jury first determined on the verdict form that Polygon did "retain a right to control the method or manner in which the risk-producing activity was performed." Next, the jury determined that Polygon did violate the ELL in at least one of the ways that plaintiff alleged. Finally, despite concluding that Polygon was at fault under the ELL, the jury found that Polygon's negligence was only 49 percent when compared to plaintiff's negligence, to which they assigned 51 percent.

We agree with plaintiff that the absence of UCJI 55.15 might have led the jury to erroneously diminish the extent of Polygon's possible wrongdoing based on an erroneous belief that Polygon could have permissibly delegated responsibility for the safety of the risk-producing activity to Wood Mechanix, even if subject to the ELL. Once the jury determined that Polygon retained control of the risk-producing activity—how workers built and used the safety guardrails—the ELL applied to Polygon. Under the ELL, the jury was correctly instructed that Polygon was responsible for taking "every device, care and precaution" practicable to protect the safety of workers' "life and limb." ORS 654.305. When subsequently assigning Polygon a lower

---

[8] That argument is reviewable, contrary to Polygon's assertions, because plaintiff is not challenging the jury's specific, factual distribution of fault percentages, but the impact of a missing jury instruction on the law available to the jury when it allocated fault. *But see Tyrrell v. Marine Propulsion Services, Inc.*, 178 Or App 392, 395, 37 P3d 1027 (2001) (explaining that a jury's specific allocation of fault is a fact that an appellate court will not reexamine unless there is no evidence to support it).

percentage of comparative fault, however, the jury might have determined that Polygon was less at fault because it was not solely responsible for the safety of the guardrails.

Polygon's arguments at trial increased the possibility that such an improper gauge of the extent of Polygon's responsibility under the law affected the jury's verdict. As to the jury's first inquiry, whether Polygon was subject to the ELL, Polygon contended that, under the terms of the contract, Polygon had successfully delegated responsibility for job site safety measures to Wood Mechanix. As to the jury's second inquiry, whether Polygon violated the ELL and thereby caused plaintiff's injury, the court instructed the jury that "defendant also contends that if the regulation was violated, it was violated solely by plaintiff's actual or direct employer, Wood Mechanix." The first question on the verdict form was whether plaintiff's fall was "caused by the sole and exclusive fault of Wood Mechanix[.]" After a series of other questions, the verdict form ultimately posed fault just as between plaintiff and Polygon. But, the trial court instructed the jury that, when weighing the comparative negligence of Polygon and plaintiff, it could find the negligence to be, in part, caused by Wood Mechanix, but only to "evaluate the comparative negligence of plaintiff and defendant."

Because the prospect of the fault of Wood Mechanix was in consideration—even if only indirectly—and because Polygon's primary defense was that responsibility for safety had been transferred to Wood Mechanix, the jury, when determining comparative fault percentages, could have assigned responsibility to Wood Mechanix for some safety-related negligence that would have been assigned to Polygon if the jury had properly received the nondelegable duty instruction. The failure to give the requested instruction could have affected the jury's verdict and was not harmless.

## CROSS-ASSIGNMENTS

In Polygon's combined first and second cross-assignments of error on appeal, Polygon contends that the trial court erred in denying its motion for a directed verdict, arguing that the Supreme Court, including in its *Yeatts I*

decision, has "never *** properly recognized" that the ELL can encompass indirect employers that retain a right of control over the risk-producing activity. We disagree. The Supreme Court has consistently interpreted the ELL, particularly ORS 654.305, as encompassing indirect employers that have "charge of" the risk-producing activity by virtue of retaining control over that activity. *Yeatts I*, 360 Or at 179; *Cortez v. Nacco Materials Handling Group, Inc.*, 356 Or 254, 273, 337 P3d 111 (2014); *Boothby v. D. R. Johnson Lumber Co.*, 341 Or 35, 40-41, 137 P3d 699 (2006); *Woodbury v. CH2M Hill, Inc.*, 335 Or 154, 160, 61 P3d 918 (2003); *Wilson v. P.G.E. Company*, 252 Or 385, 391-92, 448 P2d 562 (1968). Given that precedent, it is the Supreme Court, not us, that must decide whether that precedent has been wrongly decided.

In its second cross-assignment, Polygon also argues that plaintiff failed to present sufficient admissible evidence that Polygon's "retained right to control" caused harm to plaintiff, but Polygon does not present a separately formed argument on that point, and therefore we decline to consider it separately. *See* ORAP 5.45(6).

In Polygon's third cross-assignment, Polygon challenges the trial court's denial of its motion for a directed verdict, in which Polygon asserted that Polygon had not contractually retained a right to control the safety of the guardrails. Polygon argues that, as a matter of law, the trial court should have concluded that the contract was not ambiguous and should not have presented to the jury as a matter of fact the question of a retained right of control.[9]

In the pretrial hearings, a Polygon employee testified by deposition that the language of the contract did provide Polygon with the retained ability to require Wood Mechanix to adopt additional safety measures. On the other hand, another Polygon employee testified that the contract did not allow Polygon to require Wood Mechanix to adopt any additional safety measures. Given such contrary testimony, as well as the contract terms on which the court relied

---

[9] We note that Polygon made the opposite request and arguments in a pretrial memorandum, urging the trial court to submit the question of contract ambiguity to the jury rather than resolving the ambiguity itself.

in *Yeatts I*, the trial court correctly determined that the contract was ambiguous and that the jury must determine the meaning of the contract as a matter of fact. *See Meskimen v. Larry Angell Salvage Company*, 286 Or 87, 93, 592 P2d 1014 (1979) ("[W]e have consistently held that if the agreement is ambiguous, its meaning is a matter to be decided by the trier of the facts when, as here, extrinsic evidence is received."); *Banister Continental Corp. v. NW Pipeline Corp.*, 76 Or App 282, 286, 709 P2d 1103 (1985), *vac'd on other grounds*, 301 Or 763 (1986) ("Only if provisions of a contract are ambiguous does its meaning become a question of fact for the jury to decide. However, before submitting the question to the jury, the court must first determine, as a matter of law, that a contract provision is ambiguous."). Accordingly, the trial court did not err in denying Polygon's motion for a directed verdict. *Woodbury*, 335 Or at 159 (explaining that we will uphold the denial of a motion for a directed verdict if there is "any evidence" to support the verdict).

In Polygon's fourth cross-assignment, Polygon argues that the trial court erred in denying Polygon's motion to strike the testimony of plaintiff's expert witness Hislop regarding his opinion on Polygon's safety processes. Polygon argues that the expert witness impermissibly expressed an opinion as to Polygon's ultimate liability under the ELL.[10] At trial, plaintiff's expert witness testified as to whether Polygon's approach to managing safety guardrails, in the expert's opinion, complied with general, national practices in the construction industry. The expert also testified as to whether he believed, in his own opinion, that Polygon's practical handling of safety guardrails aligned with Polygon's own policy manual. The expert was not asked about the terms of the ELL or whether Polygon's actions met that statutory standard. Further, during Polygon's cross-examination, the expert testified that he had not even reviewed the terms of Oregon's safety regulations prior to testifying. In short, the expert witness did not impermissibly offer a legal opinion on whether certain statutory elements had been met under

_____

[10] In making that argument on appeal, Polygon refers to plaintiff's unsuccessful explanation at a preliminary hearing of an earlier proposed scope of the expert witness's testimony. Rather than permit it, the trial court prohibited the expert's testimony on whether Polygon violated the ELL.

the circumstances. *See State v. Woodford*, 293 Or App 484, 490, 428 P3d 971 (2018) (explaining that such an opinion is impermissible). We reject Polygon's fourth cross-assignment of error.

In Polygon's combined fifth and sixth cross-assignments of error, we understand Polygon to argue that the trial court erred in denying Polygon's motion to strike subparagraphs (a), (b), (d), (e), and (f) of plaintiff's complaint. Polygon asserts that those subparagraphs allege "poorly-disguised common-law negligence theories" that are not viable claims for relief under the ELL.

The Supreme Court affirmed the trial court's dismissal of plaintiff's common law negligence claims in *Yeatts I*. However, claims that were not viable under the common-law "due care" standard can permissibly be asserted under the ELL's "every device, care and precaution" standard in the same case. *See* ORS 654.305; *Cortez*, 356 Or at 277 ("[S]ome tension may exist between our resolution of plaintiff's negligence and ELL claims. Any tension results, however, from the differences between the common-law tort standards *** and the broader statutory standards that the legislature adopted in the ELL.").

Polygon also asserts, without citing any authority, that, although plaintiff asserted a claim for relief under ORS 654.305, the allegations must satisfy the more "specific" ORS 654.310, which provides that contractors must comply with every "rule or regulation made or prescribed by the Department of Consumer and Business Services pursuant to ORS 654.001 to 654.295, 654.412 to 654.423, and 654.750 to 654.780." We decline to consider, without commenting on the merits, an argument that was not fully developed before this court.

## CONCLUSION

In sum, the instruction, UCJI 55.15, advising that an employer under the ELL cannot delegate those duties, is a correct statement of Oregon law. The trial court erred by refusing to give the instruction, because it was supported by the pleadings and evidence, was not unduly cumulative, and would have avoided confusion. The error prejudiced plaintiff

and requires reversal. Therefore, we reverse and remand to the trial court for further proceedings.

Reversed and remanded.